445 So.2d 1052 (1984)
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WINTER HAVEN, a corporation, Appellant,
v.
Hugh James QUIGLEY, Appellee.
No. 83-1203.
District Court of Appeal of Florida, Second District.
February 1, 1984.
Rehearing Denied February 29, 1984.
Roy C. Summerlin and Debra L. Cline of Summerlin, Connor & Braisted, Winter Haven, for appellant.
Hugh James Quigley, pro se.
GRIMES, Judge.
Once again we consider the effectiveness of a due-on-sale clause contained in a federal savings and loan association mortgage.
On July 23, 1976, Jack and Lillian Cobb gave First Federal Savings and Loan Association of Winter Haven (First Federal) a mortgage on their home. The mortgage contained the following paragraphs:
7. No conveyance of said property, or any part thereof, shall be made by Mortgagor without the written consent of Mortgagee and without assumption by the grantee in the form prescribed by Mortgagee of the obligation to Mortgagee hereunder. In any event Mortgagee may, upon such conveyance by Mortgagor, deal directly with Mortgagor's grantee without any notice to Mortgagor in all respects pertaining to this mortgage, and may forbear to sue or may extend times for payment of the debt secured hereby without discharging or in any way affecting the liability of Mortgagor hereunder.
23. If said note, or the interest thereon, or any of the sums of money herein referred to or secured hereby are not fully paid within thirty days after the same, or any of them, become due and payable, or if each covenant, agreement, condition and stipulation of said note and this mortgage, or all of them, are not duly performed, complied with and abided *1053 by for a period of thirty days, Mortgagee shall have the option to accelerate the payment of the entire principal sum, with interest, as immediately due and payable without notice.
On April 25, 1982, Hugh J. Quigley (Quigley) contracted to buy the Cobbs' home. The purchase contract contained the following provision:
Purchaser shall make application to FIRST FEDERAL SAVINGS & LOAN OF W.H. for the purpose of qualifying for the assumption of the existing first mortgage held by said bank, in the approximate balance of $43,500.00, and which has approximately 15 years to run, provided, however, that said first mortgage does not escalate above 8 1/2% per annum in its interest rate. The balance of the principal price in the form of a purchase money second mortgage which the Seller agrees to take back, for a period of fifteen (15) years, amortized on equal monthly installments, including principal and interest at the rate of 10% per annum. In the event either of the above-mentioned mortgages are not forthcoming, Buyer shall have the right to cancel this contract and receive immediate return of all deposit monies... .
Quigley applied to First Federal for approval of assumption of the mortgage. First Federal agreed to approve Quigley for assumption subject to the following options:
1. Service Charge 5 Point Fee, No Interest Rate adjustment, 1 year Balloon Payment
OR
2. Service Charge 2 Point Fee, Interest Rate adjusted to 12 3/4% fixed rate
First Federal also advised Quigley that should he consummate the sale without its approval, the mortgage would be accelerated. Rather than going forward with the purchase, Quigley brought a declaratory judgment action against First Federal.
While the suit was pending, the United States Supreme Court in Fidelity Federal Savings & Loan Association v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), rendered a sweeping decision determining that a Federal Home Loan Bank Board regulation which permitted federal savings and loan associations to use due-on-sale clauses in their mortgages preempted California law. Notwithstanding, the trial court entered summary judgment for Quigley, holding that First Federal's due-on-sale clause could not be accelerated by virtue of the sale of the property and that First Federal could not condition its approval upon an increase in interest rates or the payment of mortgage loan points. First Federal appeals this ruling.[1]
The court below distinguished de la Cuesta on three grounds:

I. Mortgage executed before effective date of regulation.

The Cobbs' mortgage was executed and delivered on July 23, 1976. The court determined that the federal regulation authorizing due-on-sale clauses did not become effective until July 31, 1976. Two of the mortgages in de la Cuesta also predated the regulation, but at the time the regulation was enacted California had always permitted the unfettered acceleration of due-on-sale clauses upon the sale of mortgaged property. It was only after the regulation was passed that the California Supreme Court first adopted a rule that due-on-sale clauses could not be enforced unless the security of the mortgage was jeopardized by the sale. Hence, the Supreme Court found it unnecessary to consider whether the regulation had retroactive effect. In the instant case, the trial court declined to give the regulation retroactive effect and concluded that, unlike California, pre-existing Florida law prohibited the use of due-on-sale clauses absent a showing of impairment of security.
*1054 Actually, the regulation became effective before the mortgage was executed. When the de la Cuesta opinion first appeared in advance sheets, the Supreme Court noted that the effective date of the regulation was July 31, 1976. When the case finally appeared in the bound volumes, the reference to July 31 was dropped, and the opinion reflects only that the regulation was enacted in 1976. In fact, the board's specific authorization for the enforcement of due-on-sale clauses is contained in 12 CFR § 545.8-3(f) (1982),[2] which became effective on June 8, 1976. 41 Fed.Reg. 18287 (1976). The confusion resulted because subsection (g) of the regulation which contains certain limitations on due-on-sale clauses in mortgages executed after July 31, 1976, was enacted to become effective on July 31, 1976.[3]

II. Language of the mortgage does not constitute an enforceable due-on-sale clause.

The court also held that First Federal's due-on-sale clause could not be enforced because it did not contain the limitations required by subsection (g) of the regulation. Yet, subsection (g) did not become effective until July 31, 1976. The Cobb mortgage was executed during that short period of time in which due-on-sale clauses were specifically authorized without any limitations.[4] However, Quigley cannot complain because even if subsection (g) had been in effect, none of its limitations would have been applicable to this transaction.
The due-on-sale clause most often used in loan instruments is paragraph 17 of the uniform mortgage instrument developed by the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association, which is quoted in the de la Cuesta opinion. Quigley's argument that the language of First Federal's mortgage fatally departed from the customary wording of due-on-sale clauses cannot be sustained because de la Cuesta defined a due-on-sale clause as "a contractual provision that permits the lender to declare the entire balance of a loan immediately due and payable if the property securing the loan is sold or otherwise transferred." 458 U.S. at 145, 102 S.Ct. at 3018, 73 L.Ed.2d at 670. Paragraph 7 of the Quigley mortgage provided that the mortgaged property should not be conveyed without the written consent of the mortgagee, and paragraph 23 specified that upon the failure to comply with any condition of the mortgage, the mortgagee had the option to accelerate payment of the entire unpaid balance. Regardless of the form of the language, when read together, these provisions constitute a due-on-sale clause.

III. State courts' equity jurisdiction not subject to preemption.

Finally, the trial court reasoned that one who seeks to foreclose a mortgage in a *1055 state court must accept the equitable doctrines recognized by that court. Our court had originally adopted this analysis in First Federal Savings & Loan Association v. Lockwood, 385 So.2d 156 (Fla. 2d DCA 1980), when we held that a state trial court could deny a federal savings and loan association the right to enforce a due-on-sale clause absent an impairment of security. However, our view on preemption was clearly overruled in de la Cuesta when the Supreme Court held that the California courts could not apply state law to prevent the enforcement of due-on-sale clauses in federal savings and loan association mortgages. Thus, we recently reversed the refusal to enforce a due-on-sale clause contained in such a mortgage. First Home Federal Savings & Loan Association v. Nance, 436 So.2d 163 (Fla. 2d DCA 1983). See Washington Savings & Loan Association v. Concepcion del Portillo, 419 So.2d 805 (Fla. 3d DCA 1982), in which our sister court interpreted the de la Cuesta decision in a similar manner.
The summary judgment for Quigley is reversed. We also reverse the court's determination, attacked on cross-appeal, that First Federal is entitled to charge a nominal transfer fee to cover the cost of changing its records to reflect a new ownership. This point was never an issue between the parties, and there was no evidence introduced to support the court's conclusion that it was a routine and customary practice of savings and loan associations to charge a nominal transfer fee.
OTT, C.J., and CAMPBELL, J., concur.
NOTES
[1] The court's determination that Quigley had the requisite standing to sue has not been challenged on this appeal.
[2] 12 CFR § 545.8-3(f) (1982) provides:

(f) Due-on-sale clauses. An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.
[3] References to paragraphs (d) and (e) of the regulation suggest the reason for the differences in dates. Paragraph (d) pertaining to late charges was made effective on June 8, 1976, but an explanatory note in 41 Fed.Reg. 18287 (1976) points out that the effective date of paragraph (e) relating to limitations on late charges was delayed until July 31, 1976, to allow for an orderly transition and alteration of mortgage forms. Presumably, the same rationale prompted the delay in the effective date of paragraph (g) concerning limitations in the due-on-sale clauses.
[4] Evidently, the Federal Home Loan Bank Board was not troubled over the creation of a hiatus period because of its view that due-on-sale clauses were already permitted under prior regulations. See de la Cuesta, 458 U.S. at 147, 102 S.Ct. at 3019, 73 L.Ed.2d at 671.