738 So.2d 133 (1999)
Jeffrey S. LEVINE, M.D.
v.
FIRST NATIONAL BANK OF COMMERCE.
No. 98-CA-1069.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
Writ Denied October 8, 1999.
*134 Charles H. Ryan, H. Herbert Hobgood, Monroe, Louisiana, Attorneys for Appellant, First National Bank of Commerce.
Perry R. Staub, Jr., James R. Morton, Dionne L. Celestine, New Orleans, Louisiana, Attorneys for Appellee, Jeffrey S. Levine, M.D.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
In this consolidated matter, the trial court granted a preliminary injunction, enjoining the sheriff's sale of a home owned by plaintiff. Defendant appeals. For the following reasons, we affirm.
On May 22, 1998, plaintiff/appellee, Jeffrey S. Levine, M.D. (hereafter Levine), filed a petition for damages and injunctive relief against defendant/appellant, First National Bank of Commerce (hereafter FNBC), in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana. It was assigned case number 524-707, Division "I." Approximately one month earlier, FNBC filed a petition for executory process against Levine in the Twenty-Fourth Judicial District Court, which was assigned case number 523-052, Division "L."
In the earlier suit, FNBC, which holds the mortgage on a home owned by Levine in Jefferson Parish, sought to have the sheriff seize and sell the home, alleging that Levine breached the terms of the mortgage agreement by selling or transferring an interest in the secured property under a "bond for deed" contract. The Levine suit sought to enjoin the sheriff's sale of the home owned by Levine. The two matters were consolidated and proceeded to a hearing on July 13, 1998, regarding FNBC's exception of no cause of action and Levine's motion for preliminary injunction.
At the July 13, 1998 hearing, counsel for both parties stipulated that no facts were in dispute, and submitted the matter to the court based on the original mortgage between Levine and FNBC, the bond for deed contract between Levine and a third party (Sandra and Richard Carrara), the verified petition, and the arguments of counsel. During the hearing, the trial court orally ruled in favor of Levine. The trial court rendered a written judgment on July 17, 1998, denying FNBC's exception of no cause of action and ordering that a preliminary injunction issue, enjoining the sheriff from proceeding with the sale of the Levine property. FNBC timely appealed.
The following pertinent facts are gleaned from the documents submitted and the arguments of counsel at the July 13, 1998 hearing, and are not in dispute. Levine purchased the property at 2412 Avenue Mont Martre in Gretna, Louisiana, and executed a mortgage in favor of FNBC on July 31, 1996. Sometime in 1997, Levine decided to move to North Carolina. On *135 August 1, 1997, Levine and the Carraras executed a "bond for deed," wherein Levine agreed to sell the property at 2412 Avenue Mont Martre to the Carraras "in the future; provided all of the terms, conditions, payments and obligations set forth herein are fully, completely and timely met by purchaser."
Within the bond for deed contract, an escrow agent was named and an escrow account was thereafter set up. The Carraras began making payments pursuant to the bond for deed contract to the escrow agent, which in turn, paid Levine's mortgage notes to FNBC's mortgage servicing company, Colonial Mortgage. Neither Colonial nor FNBC was notified of the bond for deed contract, and after a few months of accepting the escrow agent's payments on the Levine mortgage, Colonial objected to the bond for deed arrangement and refused to accept the Levine mortgage payments. FNBC thereafter instituted foreclosure proceedings on the property, asserting that the bond for deed contract violated a provision in the mortgage agreement known as the "due on sale clause."
In its appellate brief, FNBC lists four assignments of error, which, in various ways, address the only issue before us on appeal: whether the trial court erred as a matter of law in finding that the bond for deed contract did not provide a basis for the pursuit by FNBC of foreclosure proceedings on the Levine property.[1]
La. R.S. 9:2941 provides: "A bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." Both parties agree that the contract executed between Levine and the Carraras was a bond for deed contract under Louisiana law. Title does not transfer to the Carraras until after all of the payments under the bond for deed contract are paid in full. Levine remains personally bound to FNBC according to the mortgage on the property he executed.
The "due on sale clause" is the final provision in the "adjustable rate rider," which was executed at the same time as, and amended into, the July 31, 1996 mortgage. The due on sale clause amended paragraph 17 of the mortgage, and provides:
Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by lender to evaluate the intended transferee as if a new loan were being made to the transferee; and, (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption *136 agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand to Borrower.
On appeal, FNBC argues that the first sentence of the due on sale provision gives FNBC the right to accelerate payments, and thereafter seize and sell the property, if Levine sells or transfers any interest in the property without FNBC's prior written consent. We disagree. We find that the first sentence of this provision cannot be read and enforced separately from the remainder. It is clear from a reading of the entire provision, particularly the second half of the first paragraph and the entire second paragraph, that it is intended to protect FNBC in the event of a loan/mortgage assumption. This case does not involve an assumption by the Carraras of the FNBC mortgage. While the bond for deed contract between Levine and the Carraras references the FNBC mortgage which encumbers the property, it does not include an assumption of the FNBC mortgage. Therefore, the due on sale provision, no matter how broad the language in the first sentence, does not apply to the Levine-Carraras bond for deed contract.
We further find, as did the trial court, that if the term any interest in this provision is interpreted and enforced as FNBC is attempting, it would lead to absurd consequences. At the July 13, 1998 hearing, the following exchange took place between the trial court and counsel for FNBC:
THE COURT:
Suppose [Levine] had given a mineral lease on this property. Didn't he give up the right to explore for and extract minerals [under the due on sale provision]? Or had he given a right to an olive grove on his property, where there were trees. He can alienate those, and those are real rights, are they not?

* * *
MR. RYAN (counsel for FNBC):
True. But Dr. Levine presumably, if he gave an oil and gas lease on the property, he would continue to occupy the property and he would be there as the homeowner, which is what the bank originally contracted with him to do to begin with; but now he's not there anymore. Somebody else is there....

* * *
MR. RYAN:
... I'm arguing thebecausethe due on salethe, excuse me, the bond for deed, coupled with the fact that Dr. Levine has given up the right of occupancy, that's what the bank is looking at as a violation of that mortgage agreement, because they contracted with Dr. Levine originally and now they've got some new fellow in there that they know nothing about.
It is clear from the arguments of counsel for FNBC that its primary concern is that Levine no longer lives at the property, and somehow FNBC is incurring a much greater risk by having the Carraras residing there. This argument is not persuasive. All parties agree that Levine, who FNBC clearly deemed financially able and responsible when the mortgage was executed, is still the owner of the property and remains bound by the terms and conditions *137 of the mortgage FNBC holds. Moreover, the property in question is still encumbered by the mortgage FNBC holds. Additionally, FNBC admits that all mortgage payments have been submitted to FNBC timely. Finally, there is no provision in the mortgage requiring Levine to reside in the home indefinitely.[2] We therefore agree with the trial court that no breach of the FNBC mortgage has occurred, and FNBC had no legal right to institute foreclosure proceedings.
On appeal, FNBC also argues that federal law preempts any Louisiana law which would allow Levine to perfect a bond for deed contract with a third party despite the due on sale provision in the mortgage. In support of this argument, FNBC cites the National Housing Act, 12 U.S.C.A. § 1701, et seq., which provides that "a lender may ... enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan" and defines a due-on-sale clause as "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C.A. § 1701j-3(a). (emphasis ours).
Notwithstanding these provisions, we are not persuaded by such broad and limitless language which, if read literally, would allow mortgagees to seize and sell a homeowner's property if the homeowner sold or transferred any interest, no matter how small or inconsequential, without the prior written consent of the mortgagee. Such language gives mortgagees far too much power and control over an individual's property and places a homeowner at a distinct disadvantage vis-a-vis a mortgagee, which is also virtually always the drafter of the mortgage instrument. Moreover, absent the broad language of the due on sale provision, the mortgagee remains protected from loss or risk of loss by the remainder of the mortgage instrument, which grants the mortgagee the legal right to seize and sell the property when a true breach of the mortgage occurs.
In its appeal, FNBC also asserts that the bond for deed contract between Levine and the Carraras is illegal because it violates La. R.S. 9:2942. We disagree.
R.S. 9:2942 provides that it is unlawful for the vendor to sell, by bond for deed, immovable property encumbered by a mortgage or privilege without first obtaining from the mortgagee or privilege holder, a written guarantee to release the property upon payment by the buyer of a stipulated mortgage release price.... Although these provisions were not complied with in this case, the jurisprudence holds that strict compliance is not essential to a valid bond for deed contract. Scott v. Apgar, 238 La. 29, 113 So.2d 457 (1959). The clear purpose of R.S. 9:2942 and 2943 is to safeguard the buyer of mortgaged property from fraud, deceit and misrepresentation and to assure that all payments made by the buyer will be apportioned and distributed between the seller and mortgagee, thus ensuring the buyer an unencumbered title up to the amount of the sale price stipulated in the contract. Scott v. Apgar, supra 113 So.2d at 459.
In the present case, Mrs. Gray was aware at the time she signed the contract that two mortgages burdened the property and under the express terms of the agreement she agreed to assume both mortgages as of February 23, 1982. The record indicates Mrs. Gray paid one mortgage directly and paid the other by giving the money to the seller, who paid this mortgage by automatic payroll deduction. Given these facts, we are convinced that the transaction substantially *138 complied with the purpose and intent of R.S. 9:2942 and 2943. Scott v. Apgar, supra; St. Landry Loan Co., v. Etienne, 227 So.2d 599 (La.App.1969).
Gray v. James, 503 So.2d 598, 600-01 (La.App. 4 Cir.1987) (emphasis ours).
For the foregoing reasons, we find that the bond for deed contract executed between Levine and the Carraras did not violate the provisions of the FNBC mortgage and did not provide a basis for FNBC to institute foreclosure proceedings on the Levine property. The July 17, 1998 judgment of the trial court is therefore affirmed. All costs of this appeal are assessed against appellant, First National Bank of Commerce.
AFFIRMED.
EDWARDS, J., DISSENTS WITH REASONS.
EDWARDS, J., dissenting.
I respectfully dissent from the majority opinion in this matter. It is my opinion that the trial court erred in finding that the foreclosure was improper and premature. the execution of the bond for deed contract without the defendant's knowledge or consent was a direct violation of the terms of the mortgage and of LSA-R.S. 9:2942.
Louisiana law on bond for deed contracts is codified in LSA-R.S. 9:2941 et seq. More specifically, LSA-R.S. 9:2942 states in part:
"It shall be unlawful to sell by bond for deed contract, any real property which is encumbered by mortgage or privilege without first obtaining a written guarantee from the mortgage and privilege holders to release the property upon payment by the buyer of a stipulated mortgage release price, with which agreement the secured notes shall be identified."
In other words, in a bond for deed, LSA-R.S. 9:2941 requires that the mortgagee be made aware of the transaction and consent in advance. In re LeBlanc, 98-800 (La. 5/29/98), 713 So.2d 449. The clear purpose of the statute is to safeguard the buyer of mortgaged property from fraud, deceit, and misrepresentation and to assure that all payments made by the buyer will be apportioned and distributed between the seller and mortgagee, thus ensuring the buyer an unencumbered title up to the amount of the sale price stipulated in the contract. Gray v. James, 503 So.2d 598 (La.App. 4th Cir. 1987).
In the present case, the mortgagee bank (defendant) was never notified of the bond for deed contract. While plaintiff alleges that the bond for deed is a "contract to sel" and not an actual sale in and of itself, there is still a transfer of interest between the plaintiff and the Carraras which has occurred without the consent or knowledge of the mortgagee bank. this is in direct violation of LSA-R.S. 9:2942, regardless of the intent of the plaintiff. Therefore, the "due-on-sale" clause of the mortgage is triggered and the property is subject to foreclosure.
In summary, it is my opinion that the trial court committed manifest error in finding that the foreclosure was improper and premature. The execution of the bond for deed contract without the defendant's knowledge or consent was a direct violation of the terms of the mortgage and of LSA-R.S. 9:2942. I respectfully dissent from the majority opinion.
NOTES
[1] One of FNBC's assignments of error claims "the trial court erred in failing to sustain the bank's exception of no cause of action which was based upon the argument that Dr. Levine did not have the right to enjoin the foreclosure on the mortgage ..." However, the denial of exceptions of no cause of action and no right of action are interlocutory judgments and are not appealable where, as in this matter, there has been no showing of irreparable harm. See LaPlace Sand Co., Inc. v. Troxler, 98-36 (La.App. 5 Cir.5/27/98), 712 So.2d 1077, and the cases cited therein.
[2] Paragraph 6 of the mortgage requires that Levine occupy the property as his principal residence for at least one year. It is not contested that Levine occupied the property for at least one year prior to executing the bond for deed contract.