917 So.2d 1235 (2005)
Jeffrey S. LEVINE, M.D.
v.
FIRST NATIONAL BANK OF COMMERCE.
First National Bank of Commerce
v.
Jeffrey S. Levine.
Nos. 05-CA-106, 05-CA-107, 05-CA-108.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
Rehearing Denied January 17, 2006.
*1238 Perry R. Staub, Jr., James R. Morton, Michael W. Hill, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellee.
Steven Lemoine, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellee.
Alan D. Ezkovich, Melissa M. Savoie, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
This consolidated matter arises from foreclosure proceedings instituted by First National Bank of Commerce (now Bank One and hereinafter referred to as "the Bank") against Dr. Jeffrey Levine. Dr. Levine filed a separate suit for damages and injunctive relief against the Bank. Following a jury trial, judgment was rendered in favor of Dr. Levine. A separate judgment was rendered in favor of Richard and Sandra Carrara. The Bank now appeals from the damage awards. Dr. Levine answered the appeal. For the following reasons, we affirm in part and reverse in part the trial court's judgments and remand this matter for further proceedings.

Facts and Procedural History
This suit originated as an executory proceeding by the Bank to foreclose on property located in Gretna, Louisiana. That property secured a mortgage between the Bank and Dr. Levine. The Bank sought *1239 to foreclose on the property because Dr. Levine executed a bond for deed contract on the property with Richard and Sandra Carrara without first obtaining consent of the Bank, an action which the Bank alleged was in violation of the "due on sale" clause of the mortgage agreement and Louisiana law. Shortly after the Bank's executory proceeding, Dr. Levine filed a separate petition for damages and injunctive relief against the Bank and the trial court granted a preliminary injunction enjoining the foreclosure. The Bank appealed from this ruling and a panel of this Court affirmed the judgment. Levine v. First Nat. Bank of Commerce, 98-1069 (La.App. 5 Cir. 6/1/99), 738 So.2d 133, writ denied, 99-1931 (La.10/8/99), 751 So.2d 225. Dr. Levine then pursued his claim against the Bank for damages for the wrongful foreclosure.
On April 10, 2000, Dr. Levine and Richard and Sandra Carrara filed a supplemental petition alleging they were entitled to damages under the Louisiana Unfair Trade Practice Act (LUTPA) as a result of the Bank's actions. The Bank responded with an Exception of No Cause of Action and a Motion for Summary Judgment. The exception and motion were denied by the trial court and this Court denied writs from that ruling. The Bank also brought an Exception of No Right of Action as to the Carraras' LUTPA claims, and the trial court sustained this exception. A panel of this Court upheld this ruling, finding that the transferees of a bond for deed are not among the protected persons and have no right of action under LUTPA. Levine v. First Nat. Bank of Commerce, 02-1114 (La.App. 5 Cir. 4/29/03), 845 So.2d 1189.
The Carraras then filed a separate suit against Dr. Levine alleging they were owed damages as a result of Levine's breach of the warranty of peaceable possession of the property. This matter was consolidated in the trial court with Dr. Levine's suit against the Bank. Dr. Levine answered denying liability for the Carraras' damages and further asserting a third party claim against the Bank for indemnification if he should be cast in judgment.
These consolidated matters proceeded to jury trial in October of 2003. The jury found that the Bank's actions in foreclosing on Dr. Levine's property was the sole cause-in-fact of his damages, and they rendered an award in Dr. Levine's favor in the amount of $150,000 in humiliation and embarrassment and $150,000 for mental anguish. The jury also found that the actions of the Bank in instituting foreclosure proceedings constituted unfair trade practices. Following the jury verdict, Dr. Levine filed a request for statutory attorney's fees based on the jury's determination of a LUTPA violation.
On November 24, 2003, the trial court rendered judgment in accordance with the jury verdict in favor of Dr. Levine in the amount of $300,000 and further held the Bank liable for plaintiff's reasonable attorney's fees to be determined at the close of the proceedings.
In a separate judgment rendered the same day, the trial court rendered judgment in accordance with the jury verdict in favor of Richard and Sandra Carrara and against Dr. Jeffrey Levine in the amount of $35,000 to each plaintiff in addition to the attorney's fees incurred. In this judgment, the Bank was ordered to indemnify Dr. Levine for these amounts for which he was cast in judgment.
Following these judgments, the Bank filed Motions for Judgment Notwithstanding the Verdict and for New Trial, both of which were denied by the trial court. The Bank now appeals from both of these judgments on the basis of several assignments of error. Dr. Levine has also filed an *1240 answer to the appeal seeking additional damages:

Application of LUTPA
The Bank first argues by its appeal that the trial court erred in its application of LUTPA. The Bank contends that since it is a federally chartered and regulated institution, subject to federal law and regulation by the Federal Reserve Bank and the Comptroller of Currency, it is exempt from LUTPA. The Bank argues that all of its activities are subject to the jurisdiction of the federal authorities possessing the authority to regulate unfair trade practices. The Bank contends that since monitoring and attempting to collect on loans are powers incidental to its express power to lend money, its foreclosure efforts are exempt from LUTPA. The Bank explains that it is the Bank itself, and not any of its particular transactions that are subject to federal regulation, thereby triggering the exemption to LUTPA. The Bank further argues that the trial court erred in applying the amended version of R.S. 51:1406, rather than the version of the law that was in effect at the time the mortgage contract was executed.
Dr. Levine responds that the trial court correctly applied the amended version of R.S. 51:1406(1), noting that while the prior version of the statute exempted federally chartered banks from liability under LUTPA for all aspects of their business, the amended statute exempts only those actions or transactions specifically regulated or authorized by the Comptroller of the Currency. Since foreclosure procedures are not regulated by the Comptroller of the Currency, Dr. Levine concludes that the Bank was not exempt from LUTPA in its foreclosure on his mortgage.
In 2000, the Legislature amended R.S. 51:1406(1) to read as follows:
Actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.
The prior relevant version of the statute read as follows:
Actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions and the insurance commissioner, and any bank chartered by or under the authority of the United States acting under statutory authority of this state of the United States to regulate unfair or deceptive trade practices.
A comparison of these two versions of the statute indicate that while the former statute exempted federally chartered banks from liability under LUTPA for all aspects of their business, the amended statute exempted only those "actions or transactions" specifically regulated or authorized by the Comptroller of the Currency. The Legislature expressed its intent that this amendment be corrective and retroactive stating: "The provisions of this Act are intended to clarify existing law and therefore are corrective and remedial and apply to all existing transactions." Acts 34 § 4 2000 Legislature, 1st Ex.Sess. 2000 La. When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retrospective effect because it does not change, but merely clarifies, pre-existing law. State Farm Mut. Auto. Ins. Co. v. Noyes, 02-1876 (La.App. 1 Cir. 2/23/04), 872 So.2d 1133. Thus, we find the trial *1241 court correctly applied the amended version of R.S. 51:1406 to the facts of this case.
The Bank further argues that even if the amended version of the statute is applied, LUTPA still does not apply because the collection of a loan is inherent in the Bank's express power to lend money. The Bank states that the reason for the exemption under LUTPA is to avoid duplication and exclude financial institutions that are regulated by other authorities as to unfair or deceptive trade practices. However, during the entire pendency of these proceedings, the Bank has been unable to present to the court any regulation by any other authority as to foreclosures. In determining that the Bank was not exempt under LUPTA, the trial judge stated: ". . . the court finds that the bank's activity in this case, the foreclosure undertaken relative to a bond-for-deed contract, was outside the regulatory authority of the state and federal banking agencies."[1]
This ruling is supported by the deposition and trial testimony of Joyce Schenewerk, an attorney working in the Bank's legal department. Ms. Schenewerk testified that she contacted the Office of Financial Institutions (OFI) asking it to determine whether they could foreclose based on the bond for deed contract. According to Ms. Schenewerk, the OFI responded that they "did not have regulatory authority" under the bond for deed statutes and could not comment as to whether foreclosure was proper in this case. Based on the absence of a showing of specific federal legislation and the reluctance of state regulators to issue an opinion, we agree with the trial court that the exemption in R.S. 51:1406(1) does not apply to the Bank under the facts of this case. We now turn to whether Levine met his burden of proof under LUTPA.

Burden of Proof under LUTPA:
La. R.S. 51:1409(A) provides in pertinent part:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages ... In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs.
The Bank argues that Dr. Levine failed to meet his burden of proof under LUTPA because he did not sustain an "ascertainable loss of money or movable property." The Bank contends that the jury found Dr. Levine sustained damages only for his humiliation and embarrassment and mental anguish and that his claim of economic loss was rejected by the jury because he was not awarded any special damages. The Bank also contends that plaintiff failed to prove the requirement of LUTPA that the Bank's actions were immoral or unethical. The Bank contends that they were reasonable in enforcing the due on sale covenant in their mortgage agreement.
Dr. Levine responds that under LUTPA, actual damages include damages for mental anguish and humiliation. In Laurents v. Louisiana Mobile Homes, Inc., 96-976 (La.App. 3 Cir. 2/5/97), 689 So.2d *1242 536, the Court held that La. R.S. 51:1401, et seq., provides for the recovery of actual damages, which include damages for mental anguish and humiliation.
Further, there was ample testimony in the record that the conduct of the Bank in foreclosing on this property where there was a performing loan was unprecedented. The Bank's former employees who testified regarding the decision to foreclose indicated that the Bank was uncertain as to whether the Bank had the authority to take that action. An employee testified that the Bank considered getting an Attorney General opinion but concluded that it would be too time consuming and made the decision to foreclose without it. The jury apparently chose not to credit the testimony of the Bank's witnesses and a review of the record supports this factual determination. The jury did not manifestly err in determining that the Bank's actions were unfair in their decision to foreclose on plaintiff's property.
Thus, we find that the record supports the trial court's finding of a violation of LUTPA in the present case. We further find the trial court did not err in awarding attorney's fees under LUTPA because an award of actual damages under this section includes an award for mental anguish and humiliation.

Jury Instructions Regarding Wrongful Seizure
The Bank contends that the trial court erred in advising the jury that there had been a previous judicial finding of wrongful seizure on the part of the Bank. The Bank contends that the foreclosure proceedings of the subject property were not wrongful and that the record contains no evidence indicating that the Bank employed any illegal procedure in attempting to foreclose on this property. Further, the Bank argues that the trial court erred in indicating to the jury that the foreclosure was wrongful where there had only been a preliminary ruling enjoining the foreclosure proceedings.
The record in this case indicates that the Bank failed to object at trial to the court's statements or instructions regarding the prior judicial determination regarding the foreclosure proceedings. Further, although the Bank contends that the ruling regarding their actions in foreclosing on the property was only preliminary, a panel of this Court specifically held that the execution of the bond for deed contract was not grounds for the Bank's foreclosure. Specifically, the majority opinion stated as follows:
We therefore agree with the trial court that no breach of the FNBC mortgage has occurred, and FNBC had no legal right to institute foreclosure proceedings.
* * *
For the foregoing reasons, we find that the bond for deed contract executed between Levine and the Carraras did not violate the provisions of the FNBC mortgage and did not provide a basis for FNBC to institute foreclosure proceedings on the Levine property.

Levine v. First Nat. Bank of Commerce, 98-1069 (La.App. 5 Cir. 6/1/99), 738 So.2d 133, 137-38, writ denied, 99-1931 (La.10/8/99), 751 So.2d 225.
The Supreme Court denied the Bank's application for writs. Although the Bank contends that the trial court erred in failing to require proof on the issue of the legality of the foreclosure proceedings, we find that the previous ruling of this Court fully addresses the substance of this issue and is considered to be the law of the case. As this Court recently stated in Shaffer v. Stewart Const. Co. Inc., 03-971 (La.App. 5 Cir. 1/13/04), 865 So.2d 213, 218:

*1243 The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. The reasons for the law of the case doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. (Citations omitted.)
We find that the issue of the legality of the foreclosure proceedings was fully litigated and determined in the previous rulings in this case, and the trial court in the present case was correct in refraining from relitigating that same issue at the trial herein. The Bank's argument therefore has no merit.

Damage Award
The jury awarded Dr. Levine $150,000.00 for humiliation and embarrassment and $150,000.00 for mental anguish. The Bank contends this award is not supported by the evidence.
Dr. Levine testified that he is a physician specializing in gastroenterology. He and his wife decided to move to Elizabeth City, North Carolina because they thought a small town would be a good place to raise a family. He listed his house in Gretna with a realtor and it did not sell. He put up a "for sale by owner" sign and a builder who was also a realtor contacted him. This realtor found a buyer, the Carreras, who did not qualify for a mortgage. The realtor explained the bond for deed contract and Dr. Levine testified that this sounded like a way to sell the house. Dr. Levine testified that he understood that he was still obligated to pay the mortgage.
Dr. Levine and his wife moved to North Carolina in July 1997 and he began working with another gastroenterologist, Dr. Steven Faber, in a two physician practice. Dr. Levine explained that when he and his wife moved, they rented an apartment while looking for a house. Shortly thereafter, he received a letter from Colonial Mortgage (the company that serviced the mortgage) informing him he had violated a provision of the mortgage contract and the entire loan was due within 30 days. Dr. Levine testified that he thought this was a mistake so he contacted an attorney to straighten it out. The attorney informed him that it was no mistake; the Bank took the position that he violated the mortgage contract by entering into the bond for deed contract and they would foreclose on the house. Dr. Levine testified that he and his attorney discussed various options to stall the foreclosure proceedings including Dr. Levine paying additional principle on the house and the Bank's legal fees incurred thus far. This offer was rejected by the Bank.
Dr. Levine testified as to the effect this proceeding had on his life in North Carolina. He testified that he took the obligation to provide for his wife and daughter very seriously and when he faced the possibility of foreclosure and all of its ramifications, he felt he had failed his family. When he was informed that the house could be foreclosed on and sold at auction and he was liable for the difference in the amount owed to the Bank, he became very concerned about having his wages garnished and declaring bankruptcy. Because of this he and his wife decided not to *1244 look for a house in North Carolina until these proceedings concluded.
Dr. Levine explained that his wife wanted to buy a $400.00 vacuum cleaner that could be obtained on credit with no finance charges. When they applied for the credit, they were turned down because of the effect the foreclosure proceedings had on his credit rating.
Dr. Levine testified that the town where they lived in North Carolina, Elizabeth City, was a small town. As a specialist, his practice required other physicians refer patients to him. The fact that he was not buying a house led other physicians to believe that he was not going to stay in the area permanently. This led to his practice not growing. Dr. Levine explained that he also felt that physicians and others in the community who knew the story of the foreclosure proceedings thought he must have done something wrong in not paying the loan to have the bank foreclosing on his house.
Dr. Levine testified that after two years of the practice not growing, he and his wife decided to move to another town. He explained that they chose a larger community so everyone would not know of the foreclosure proceedings. Dr. Levine testified that in the new town, Bristol, Tennessee, he and his wife lived in a very small apartment. They were waiting for these proceedings to conclude before buying a house because of the fear of being turned down for financing and also of having to declare bankruptcy if the foreclosure took place. After several months of living in a small apartment, he and his wife decided to take a risk and buy a house. They were able to get financing through a bank that did business with Dr. Levine's medical practice.
Dr. Levine and his wife also testified regarding their feelings that the stress of these proceedings resulted in their inability to conceive a child.
In Andrus v. State Farm Mut. Auto.Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206, 1210, the Supreme Court stated:
In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion.
Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award
While we acknowledge that the awards given by the jury seem high, we note that this matter has dragged on for eight years. Dr. Levine testified at trial that his credit rating was still affected by this matter. We have found no wrongful foreclosure cases specifically dealing with a physician whose practice was adversely affected by the foreclosure proceedings. Dr. Levine testified extensively about his embarrassment and humiliation over this event and the feelings of failure he had regarding his obligation to provide security for his family. Under the circumstances of this particular *1245 case, we do not find that this award was an abuse of the jury's much discretion. Accordingly, the general damage award rendered in favor of Dr. Levine is affirmed.

Dr. Levine's Answer to the Appeal:
Dr. Levine answered this appeal contending that he presented un-rebutted evidence that he suffered losses in the form of storage fees and rent due to the wrongful foreclosure on his property. He contends the jury erred in not awarding special damages. We disagree.
Dr. Levine testified that he and his wife moved into an apartment in North Carolina before the foreclosure proceedings even began. He explained that it was their intention to live in an apartment until they decided where they wanted to live in the area. He testified that they placed many items in storage because the apartment was much smaller than the house in Gretna. He further testified that he and his wife did not continue to look for a house after the foreclosure proceedings began. Even if the Levines had purchased a house in North Carolina, they still would have incurred living expenses. They did not have to move out of the house in Gretna due to the foreclosure proceedings, nor did they incur additional living expenses because of the foreclosure proceedings. Thus it is reasonable to assume that the jury concluded that Dr. Levine would have incurred living expenses while living in North Carolina regardless of the foreclosure proceedings. Accordingly, we find no error in the jury's failure to award special damages.

The Bank's Appeal of the Carrera Judgment:
After this Court affirmed the trial court's dismissal of the Carraras' claims against the Bank, the Carraras filed suit against Dr. Levine alleging he breached his duty to provide peaceable possession to the property. Dr. Levine filed a third party demand against the Bank alleging that if he were cast in judgment, the Bank should be cast in judgment for the same amount. The jury awarded $35,000.00 to Richard Carrara and $35,000.00 to Sandra Carrara for mental anguish. The trial court entered judgment ordering the Bank to indemnify Dr. Levine for all amounts that Dr. Levine has been cast in judgment. The Bank has appealed the judgment against it as a third party defendant in the suit filed by the Carraras against Dr. Levine.
At the outset, we note that the jury interrogatories indicate that although the jury found the warranty of peaceable possession had been breached, and the Bank was 100% at fault for that breach. The jury failed to find any liability for the breach on the part of Dr. Levine. Accordingly, the jury interrogatories do not support a judgment in favor of the Carraras and against Dr. Levine. Under these circumstances, the trial court's judgment ordering the Bank to indemnify Dr. Levine for what he was cast in judgment is erroneous as the jury interrogatories indicate there was no finding of liability on the part of Dr. Levine. Although we find that the judgment in favor of the Carraras and against Dr. Levine as well as the judgment ordering the Bank to indemnify Dr. Levine must be vacated on this basis, we will nevertheless consider the Bank's argument regarding the finding of liability for the Carraras' damages.
First, the Bank argues the trial court erred in entering judgment against Dr. Levine because the bond for deed contract does not guarantee peaceable possession and that right is not automatically inherent in a bond for deed contract. The Bank contends the trial court erred in holding that a bond for deed contract bestowed *1246 upon Dr. Levine a lessor's duty to keep the lessee in peaceable possession of the property and instructing the jury that a lessor breaches its obligation to maintain the lessee in peaceable possession if there is a disturbance such that the lessee can no longer use the premises for the purpose intended.
The Carraras respond that the manner of payment in a bond for deed contract partakes of the elements of a lease. They argue that the case law has held that an occupant of the property in a bond for deed is the same as a lessee and as such the lessor can evict a grantee on a bond for deed just as a lessor can evict a lessee on a lease. The Carreras then point to C.C. art. 2700 which grants a lessee a right of peaceful possession and argue that a grantee on a bond for deed is granted a right of peaceable possession. They further argue that the contract granted the "immediate right of exclusive possession of the herein described Property" and they were contractually owed a right of peaceable possession.
The codal articles governing the bond for deed contract do not contain a right to peaceable possession as do the articles governing leases, nor does the jurisprudence contain any cases discussing the right of peaceable possession in a bond for deed contract. It is clear, however, that when a grantee defaults on a bond for deed contract, he is entitled to repayment of all monies paid towards the purchase price, including any down payment, insurance premium and taxes paid. Berthelot v. Le Investment, L.L.C., 02-2054 (La.App. 4th Cir.1/21/04), 866 So.2d 877. The grantor is only allowed to retain an allowance for the fair rental value of the property during the period of occupancy. Id. Thus, the courts have treated the grantee of a bond for deed the same as a lessee on a lease. Accordingly, we agree that a grantee on a bond for deed is entitled to peaceable possession of the property. Any other interpretation would be contrary to public policy.
Next, the Bank argues that even if the Carraras were guaranteed a right of peaceable possession, it was not breached. The Carraras never lost their rights under the bond for deed and were never evicted from the property. A petition for executory process and an order of seizure and sale of leased property do not constitute a disturbance of peaceable possession absent a denial of access or an order to vacate. Plater v. Ironwood Land Co., L.L.C., 39,085 (La.App. 2 Cir. 12/8/04), 889 So.2d 475, 480. Thus, we find the jury erred in finding the duty of peaceable possession owed to the Carraras was breached by Dr. Levine. Accordingly, the judgment in favor of the Carraras and against Dr. Levine must be reversed.

Conclusion:
The judgment of the trial court in favor of Richard and Sandra Carraras and against Dr. Jeffrey Levine as well as the order requiring the Bank to indemnify Dr. Levine for these damages is hereby vacated and reversed. The judgment of the trial court rendered in accordance with the jury verdict in favor of Dr. Levine and against the Bank in the amount of $300,000.00 is hereby affirmed. The judgment requiring the Bank to reimburse Dr. Levine for his attorney's fees is also affirmed. This matter is remanded to the trial court for a determination of the amount of attorneys' fees including fees for the bringing of this appeal.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
DALEY, J., dissents with reasons.
*1247 DALEY J., dissents with reasons.
I respectfully dissent from the portions of the majority opinion, which affirmed the judgment in favor of the Jeffrey S. Levine against the Bank.
The legal issues raised in the appeal stem from the fact that a bond for deed is a hybrid legal device. Traditionally, the Louisiana Civil Code, as interpreted, prohibited conditional sales under which transfer of title is postponed until payment of full purchase price.[2] An exception to the rule against conditional sales is the bond for deed contract.[3] The bond for deed contract is not a sale and title is not transferred thereby.[4] The bond for deed contract to sell is not a lease, but possesses some of the attributes of a lease.[5] The Louisiana Legislature recognized problems created by the bond for deed contract when they passed a Resolution in 1993, which stated:
The separation of occupancy and ownership under bond-for-deed may cause uncertainty in certain related areas of the law, such as taxation ..., financing ... the application of `due on sale' clauses...[6]
I dissent from the majority position in this case because under federal law the bond for deed contract executed by Dr. Levine activated the due-on-sale clause of his mortgage and would allow the foreclosure.
The Bank argues as its third Assignment of Error that the trial court erred in prejudging the foreclosure as a wrongful seizure. The Bank acknowledged that the trial court issued an injunction arresting the foreclosure that was affirmed by this Court, but the Bank argues that the issuing of the injunction, which stopped the executory process did not adjudicate the foreclosure "wrongful." Levine argues that the law of the case doctrine precludes re-litigation of the wrongfulness of the foreclosure.
The application of the law of the case doctrine is discretionary and should not be applied when it would cause "obvious injustice or manifest error." Iberia Parish School Board v. Broussard, 03-0151 (La. App. 3rd Cir.9/10/03), 854 So.2d 464, 466. In order to determine if the law of the case doctrine should apply the Court must analyze this Court's prior opinion affirming the granting of the injunction and its dissent.[7]
This Court's prior opinion concluded that "the bond for deed contract executed between Levine and the Carraras did not violate the provisions of the FNBC mortgage and did not provide a basis for FNBC to institute foreclosure proceedings..."[8] Two judges of the three judge panel narrowly interpreted the due-on-sale clause in the applicable mortgage to only be triggered by a sale and assumption and narrowly construed 12 U.S.C.A. § 1701 reasoning that,
... if read literally, [12 U.S.C.A. 1701] would allow mortgagees to seize and sell a homeowner's property if the homeowner sold or transferred any interest, no matter how small or inconsequential, *1248 ... Such language gives mortgagees far too much power and control over an individual's property ...[9]
The dissenting judge strongly disagreed with the majority position concluding that the bond for deed not only activated the due-on-sale clause, but that it also violated state law, which required that the bond for deed seller obtain and record a written guarantee from the mortgage holder to release the property upon payment of a stipulated price. The dissenting opinion held:
The execution of the bond for deed contract without the defendant's [bank's] knowledge or consent was a direct violation of the terms of the mortgage and of LSA-R.S. 9:2942."[10]
I find the law of the case doctrine not applicable here because this Court's prior opinion interpreted federal law, without a detailed analysis of the federal regulations addressing due-on-sale clauses.
Dr. Levine executed a mortgage encumbering his property, which contained a due-on-sale clause (Covenant 17).
Uniform Covenant 17 contained in the mortgage instrument provides:
Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the property or any interest in it is sold or transferred ... without Lender's prior written consent, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.
The Bank alleges that the bond for deed by Jeffrey S. Levine to Sandra Steffensen Carrara, wife of/and Richard C. Carrara dated August 18, 1997, constituted a transfer without consent and activated the due-on-sale clause. The bond for deed contract document contains the following language:
NOT A SALE: IT IS CLEARLY UNDERSTOOD AND AGREED THAT THIS DOCUMENT IS NOT A SALE, TRANSFER OR CONVEYANCE, BUT ONLY A WRITTEN CONTRACT TO SELL, TRANSFER, AND CONVEY THE HEREIN DESCRIBED PROPERTY IN THE FUTURE; PROVIDED ALL OF THE TERMS, CONDITIONS, PAYMENTS AND OBLIGATIONS SET FORTH HEREIN ARE FULLY, COMPLETELY AND TIMELY MET BY THE PURCHASER.
Under the bond for deed the purchaser had exclusive possession of the property. The purchasers were paying the seller's first mortgage through an escrow arrangement. The contract installment obligations lasted seven years. While the document purports not to transfer title it clearly transfers contractual rights affecting the property and is the type of transaction, which the federal regulations designate as a transfer sufficient to activate a due-on-sale clause.
A review of the definition section of 12 C.F.R. § 591.2 is instructive when addressing the pivotal question in this case: Did the bond for deed contract activate the due-on-sale clause? 12 C.F.R. § 591.2(b) states:
(b) Due-on-sale clause means a contract provision which authorizes the lender, at its option, to declare immediately due and payable sums secured by the lender's prior written consent. For purposes of this definition, a sale or transfer means the conveyance of real property of any right, title or interest therein, whether legal or equitable, whether voluntary or involuntary, by outright sale, *1249 deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three years, lease-option contract or any other method of conveyance of real property interests.
12 C.F.R. § 591.2(b) specifically identifies the types of transfers that trigger due-on-sale clauses ("sale, deed, installment sale contract, land contract, contract for deed"). 12 C.F.R. § 591.5 identifies certain transfers, which would not activate the due-on-sale clause (i.e. Transfer by dissent or operation of law, leasehold interest with a term of less than three years, transfers where the spouse or children become the owner, etc.). The fact that federal regulations identify the types of transfers, which activate and do not activate due-on-sale clauses, undermines the logic of this Court's prior opinion.
Since a "bond for deed" is not specifically identified in the regulation the Court must determine if the bond for deed instrument falls within the definitional criteria of the federal regulations. The Bank takes the position that the bond for deed, in this case, is in fact a "contract for deed," which pursuant to 12 C.F.R. § 591.2(b) activates the due-on-sale clause. Black's Law Dictionary defines a contract for deed as:
An agreement by a seller to deliver the deed to the property when certain conditions have been met, such as completion of payments by purchaser.
Bond for deed is defined by La. R.S. 9:2941 as:
a contract to sell real property in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.
A contract for deed is frequently called a bond for deed.[11] "The so-called `bond for deed' contract is the conditional sale of an immovable."[12] "... [T]he bond for deed contract, as generally utilized by Louisiana attorneys, is no more than a conditional sale ..."[13] In Louisiana Practice Series; Louisiana Real Estate Transactions, the author comments:
The bond for deed has been used in some cases to circumvent a lender's right to accelerate the mortgage loan upon the transfer, since a bond for deed does not transfer title to the mortgaged property. The execution of a bond for deed is, however, considered a sale or transfer under 12 C.F.R. § 591.1, et seq., which preempts Louisiana law. Under 12 C.F.R. § 591.2(b) a sale or transfer includes a conveyance of real property by contract for deed. Thus, a lender may enforce a due on sale clause if the borrower executes a bond for deed contract even though the borrower retains legal title until the purchaser's completion of payments.[14]
The Louisiana definition of bond for deed and the above cited authority suggest that *1250 the document entitled bond for deed executed by Dr. Levine is a contract for deed.
Appellees argue that the contract between the parties controls and since the mortgage agreement does not specifically state that a bond for deed contract caused the due-on-sale clause to be activated the execution of a bond for deed could not be a basis for escalation of the mortgage. Ambiguities in due-on-sale provisions are construed against the drafter of the document.[15] This argument, while logical and supportable by contract theory, ignores the fact that the bond for deed instrument contractually accomplishes the exact same thing as a contract for deed or an installment land contract and therefore under the federal regulations clearly is the type of instrument that triggers a due-on-sale clause.
Notwithstanding the above, I also dissent from the majority opinion because I find LUTPA does not apply and Levine was not entitled to attorney fees. In the first Assignment of Error the Bank argues that the trial court erred in applying LUTPA. The Bank contends that since it is a federally chartered and regulated institution, subject to federal law and regulation by the Federal Reserve Bank and the Comptroller of Currency, it is exempt from LUPTA. The Bank argues that all of its activities are subject to the jurisdiction of the federal authorities possessing the authority to regulate unfair trade practices and since monitoring and attempting to collect on loans are powers incidental to its express power to lend money, its foreclosure efforts are exempt from LUTPA. Levine responds that R.S. 51:1406(1) exempts only those actions or transactions specifically regulated or authorized by the Comptroller of the Currency. Since foreclosure procedures are not regulated by the Comptroller of the Currency, Levine concludes that the Bank was not exempt from LUTPA in its attempted foreclosure on his mortgage.
It is undisputed that the Bank is a federally chartered and regulated institution, thereby subject to regulation by the Federal Reserve System and the Department of the Treasury, Office of Thrift Supervision. The regulations controlling the Bank have a special provision related to unfair trade practices codified in 15 U.S.C. § 57a(f)(1), which provides in pertinent part:
In order to prevent unfair or deceptive acts or practices in or affecting commerce (including acts or practices with are unfair or deceptive to consumers) by banks ... each agency ... shall establish a separate division of consumer affairs which shall receive and take appropriate action upon complaints with respect to such acts or practices by banks ... subject to its jurisdiction. The Board of Governors of the Federal Reserve System ... shall prescribe regulations to carry out the purposes of this section, including regulations defining with specificity such unfair or deceptive acts or practices, and containing requirements prescribed for the purpose of preventing such acts or practices.
In Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987), the Louisiana Supreme Court held that the act of collecting loans is inherent in the bank's power to lend money and thus is an action subject to the jurisdiction of the commissioner of financial institutions thereby exempting the Bank from LUTPA.
The Code of Federal Regulations, 12 C.F.R. § 591.5 specifically addresses due-on-sale practices, stating:

*1251 ... due-on-sale practices of Federal savings associations and other lenders shall be governed exclusively by the Office's [Office of Thrift Supervision, Department of the Treasury] regulations, in preemption of and without regard to any limitations imposed by state law on either their inclusion or exercise ...
Federal regulations addressing due-on-sale clauses were enacted in 1976.[16] Federal law provides that lenders may enter into and enforce mortgages containing due-on-sale clauses not-withstanding state judicial decision to the contrary.[17] "[F]ederal law pre-empts all state legislative and judicial restrictions on the enforceability of due-on-sale clauses as to mortgages ..."[18] Accordingly, I find the trial court erred as a matter of law in finding that LUTPA applied to the suit filed by Levine against the Bank since the enforceability of due-on-sale clauses in mortgages is clearly regulated by federal law.[19]

ATTORNEY FEES:
Next, the Bank argues that absent the attorney fees provisions of LUTPA, there exists no statutory basis for the award of attorney fees. The Bank acknowledges that prior to 1989, attorney fees were statutorily authorized as an element of damages in a wrongful foreclosure action, but point out that C.C.P. art. 2751, which addresses grounds for arresting seizure and sale and damages was amended deleting any reference to an award for attorney's fees. The Editor's Notes following C.C.P. art. 2751 are instructive. They state:
The following language was deleted by Acts 1989, No. 137 § 18 `Attorney's fees for the services rendered in connection with the injunction may be included as an element of the damages.'"[20]
Generally a party to litigation in Louisiana has no right to recover attorneys' fees absent contractual obligation or authority statute.[21] One important exception to the general rule applies where the attorney's services are essential to prevent or reduce damages caused by the tort. For instance in a suite for malicious prosecution attorney's fee may be considered part of plaintiff's tort damages.[22]
I find that the amendment to C.C.P. art. 2751 in 1989 deleted the reference to attorney fees as an element of damages in wrongful foreclosure proceedings evidencing a legislative intent not to have attorney fees applicable in wrongful foreclosure situation. Based on my findings that LUTPA does not apply, I agree with the Bank's position that there is no statutory authority for the award of attorney's fees in this case.
I find that pursuant to Federal Banking Laws, specifically 12 C.F.R. § 591.2, the Bank, in this case, had a legal basis to activate the due-on-sale clause and, therefore, do not find that the Bank's foreclosure *1252 action to be negligent. Based on the above, I find that the trial court and jury committed legal error in ruling against the Bank and I would reverse the Judgment against the Bank in its entirety.
NOTES
[1] Supervisory writs to this Court regarding this ruling were denied "on the showing made," with the majority holding that they could not determine whether LUTPA applied without seeing the petition filed by Levine which was not submitted with the writ application. Thus, there is no "law of the case" holding that LUTPA does apply.
[2] Louisiana Civil Law Treatise 16 La. Civ. L. Treatise § 3.30 (2d ed) (TREATISE).
[3] Supra.
[4] See Cosey v. Cosey, 364 So.2d 186, (La.App. 1 Cir.1978), (writ granted 366 So.2d 570 affirmed 376 So.2d 486).
[5] Bennett v. Hughes, 876 So.2d 862, 866.
[6] House Concurrent Resolution No. 246 of the 1993 Regular Session.
[7] Levine v. First National Bank of Commerce, 98-1069 (La.App. 5 Cir. 6/1/99), 738 So.2d 133
[8] Supra, at 137.
[9] Supra, at 137.
[10] Supra, at 138.
[11] Restatement of the Law  Property, Restatement (Third) of Property-Security (Mortgages) 1992, American Law Institute § 3.4 A, Comment: a. Introductory note ("The contract for deed ... is also frequently called an `installment land contract', a `long term land contract', an `installment sale contract,' `bond for deed,' and a `land sale contract.')
[12] See: Huey L. Golden, Comments, The Conditional Sale in Louisiana Jurisprudence: Anatomy of a Synecdoche, 54 La. L.Rev. 359, 363 (1993).
[13] See: David Levingston, Comments, Bond for Deed Contracts, 31 La. L.Rev. 587, 594 (1971).
[14] Louisiana Practice Series, Louisiana Real Estate Transactions (2004) § 11:52 by Peter S. Title.
[15] Rayford v. Louisiana Sav. Assoc., (La.App. 3d Cir.), 380 So.2d 1232.
[16] See First Federal Sav. & Loan Asso. v. Quigley (Fla.App.D2), 445 So.2d 1052.
[17] 12 U.S.C.A. § 1701j-3 (the Govn.-St. Germain Act of 1982).
[18] 55 Am.Jur.2d, Mortgages § 497.
[19] Supervisory writs to this Court regarding this ruling were denied "on the showing made," with the majority holding that they could not determine whether LUTPA applied without seeing the petition filed by Levine which was not submitted with the writ application. Thus, there is no "law of the case" holding that LUTPA does apply.
[20] See C.C.P. Art. 2751 Editor's Notes.
[21] See Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978).
[22] See Ramp v. St. Paul Fire and Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972) and Ross v. Sheriff of Parish of Lafourche, 479 So.2d 506 (La. 1 Cir.1985).