948 So.2d 1051 (2006)
Jeffrey S. LEVINE, M.D.
v.
FIRST NATIONAL BANK OF COMMERCE
First National Bank of Commerce
v.
Jeffrey S. Levine.
Nos. 2006-C-0394, 2006-C-0439.
Supreme Court of Louisiana.
December 15, 2006.
Rehearing Denied February 16, 2007.
*1053 Ezkovich & Company, Alan D. Ezkovich, Melissa M. Savoie; Morrison & Forrester, Beth S. Brinkmann, Seth M. Galanter, Brian R. Matsui, for Applicant in No. 2006-C-0394.
Steven Lemoine, Baton Rouge; Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, Perry R. Staub, Jr., James R. Morton, New Orleans, Amanda S. Moore, for Respondent in No. 2006-C-0394.
David Joseph Boneno, for Louisiana Bankers Association, Amicus Curiae.
Michael H. Rubin; McGlinchey Stafford, Baton Rouge; Joseph M. Kolar, Matthew P. Previn, Buckley Kolar, for American *1054 Financial Services Assn., America's Community Bankers Assn., Consumer Banker's Assn., Consumer Mortgage Coalition, Housing Policy Counsel of the Financial Services Roundtable and Mortgage Bankers Association, Amicus Curiae.
Steven Lemoine, Baton Rouge, for Applicant in No. 2006-C-0439.
Ezkovich & Company, Alan D. Ezkovich, Melissa M. Savoie; Morrison & Foerster, Beth S. Brinkmann, Seth M. Galanter, Brian R. Matsui; Taggart, Morton, Ogden, Stub, Rougelot & O'Brien, Perry R. Staub, Jr., James R. Morton, New Orleans, Amanda S. Moore, for Respondent in No. 2006-C-0439.
WEIMER, Justice.
After a homeowner and a national bank signed a mortgage which contained a due-on-sale clause, the homeowner transferred his property pursuant to a bond for deed which placed the transferees in immediate and exclusive possession and granted the transferees the right to demand specific performance and eventually acquire title. Claiming the bond for deed triggered the due-on-sale clause, the bank sued to foreclose. The homeowner responded with a suit for preliminary injunction and damages. Writs were granted in these consolidated cases, in part to determine whether, based on federal law, the bond for deed triggered the due-on-sale clause in the homeowner's mortgage absent the bank's approval of the transfer.
For the reasons that follow, we conclude the due-on-sale clause was triggered, which requires reversal of the judgment that was rendered in favor of the homeowner and against the bank for damages due to the seizure of the property.

FACTS AND PROCEDURAL BACKGROUND
The relevant facts are undisputed.
Dr. Jeffrey S. Levine completed his medical residency in gastroenterology and began practice in New Orleans, Louisiana. In anticipation of being married, Dr. Levine purchased a home at 2412 Mont Martre Avenue, Gretna, Louisiana, in 1996. In order to finance the purchase, Dr. Levine entered into a mortgage on the property with First National Bank of Commerce (Bank).[1] Dr. Levine married on August 11, 1996.
Approximately a year later, the couple decided they wanted to locate to a less urban area, and Dr. Levine put his house on the market; they ultimately moved to Elizabeth City, North Carolina.
Shortly before he moved to Elizabeth City, Dr. Levine met Richard and Sandra Carrara, who wanted to purchase the Gretna property. Because Richard had recently retired and begun self-employment as a consultant for oil companies, the Carraras were ineligible for a conventional mortgage to purchase the property. On the advice of the agent selling the house, Dr. Levine and the Carraras entered into a Louisiana bond for deed on August 1, 1997, without notice to the Bank.
Under the terms of the bond for deed, the Carraras would make 84 monthly payments to Escrow-Serv, Inc., a bond-for-deed escrow agency. Escrow-Serv, Inc. would retain a $20.00 fee and forward the remainder of the monthly payment to Colonial Mortgage Company, the mortgage-servicing agency for the Bank, in satisfaction of the monthly installment specified in Dr. Levine's mortgage. At the *1055 conclusion of the seven-year term of the bond for deed, the Carraras were to pay off the remaining balance under the Bank's mortgage, and Dr. Levine would transfer title to the property to the Carraras.
The Levines moved to Elizabeth City and the Carraras moved into the house in Gretna.
In August of 1997, Colonial Mortgage reported to the Bank that an entity other than Dr. Levine was making the mortgage payments. A Bank officer wrote to Colonial Mortgage and instructed that company not to accept any further payments from Escrow-Serv, Inc. On September 8, 1997, Colonial Mortgage wrote to Dr. Levine and advised him the Bank considered his entry into the bond for deed to be a violation of the due-on-sale clause[2] of the Bank's mortgage.
On April 13, 1998, after some negotiations between the parties that did not result in a resolution of the matter, the Bank instituted foreclosure proceedings in the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
Shortly thereafter, Dr. Levine filed a separate petition for damages and for injunctive relief against the Bank; the trial court granted a preliminary injunction enjoining the foreclosure. The Bank appealed from this ruling and the appellate court affirmed the judgment. Levine v. First National Bank of Commerce, 98-1069 (La. App. 5 Cir. 6/1/99), 738 So.2d 133, writ denied, 99-1931 (La.10/8/99), 751 So.2d 225 (Levine I). Dr. Levine then pursued his claim for damages against the Bank for wrongful seizure.
On April 10, 2000, Dr. Levine, joined by Richard and Sandra Carrara, filed a supplemental petition alleging they were entitled to damages from the Bank for violations of Louisiana's Unfair Trade Practices and Consumer Protection Law (LUTPA), LSA-R.S. 51:1401, et seq. The Bank responded to the doctor's claim with an exception of no cause of action and a motion for summary judgment. The exception and motion were denied by the trial court, and the court of appeal denied the Bank's writ application seeking reversal of that ruling. Levine v. First National Bank of Commerce, # 02-C-0312.[3] The Bank also brought an exception of no right of action as to the Carraras' LUTPA claim, which the trial court sustained. The appellate court affirmed that ruling, finding the transferees of a bond for deed are not among the protected persons under LUTPA and have no right of action against the Bank. Levine v. First National Bank of Commerce, 02-1114 (La.App. 5 Cir. 4/29/03), 845 So.2d 1189 (Levine II).
Then the Carraras filed a separate suit against Dr. Levine, alleging they were owed damages as a result of Dr. Levine's breach of the warranty of peaceable possession of the property. This suit was consolidated in the trial court with Dr. Levine's suit against the Bank Dr. Levine answered the Carraras' demand, denying liability to the Carraras and further asserting a third party claim against the Bank for indemnification if he should be cast in judgment.
*1056 In October 2003, the consolidated matters proceeded to a jury trial. The jury found the Bank's actions in foreclosing on Dr. Levine's property to be the sole cause-in-fact of his damages, and awarded Dr. Levine a total of $300,000 for humiliation, embarrassment, and mental anguish. The jury also found the Bank's actions constituted unfair trade practices. Following the jury verdict, Dr. Levine filed a request for statutory attorney's fees based on the jury's determination of a LUTPA violation.
On November 24, 2003, the trial court rendered judgment in favor of Dr. Levine for $300,000 and further determined the Bank was liable for plaintiff's reasonable attorney's fees, the amount of which would be determined at a later date. In a separate judgment, the trial court rendered judgment against Dr. Levine and in favor of Richard and Sandra Carrara in the amount of $35,000 each, in addition to the attorney's fees incurred. In this judgment, the Bank was ordered to indemnify Dr. Levine for the amounts for which he was cast in judgment.
Following post-trial motions, which were denied, the Bank appealed from both judgments. Dr. Levine answered the appeal, seeking additional damages. The court of appeal vacated and reversed the judgment in favor of Richard and Sandra Carraras and against Dr. Levine, as well as the order requiring the Bank to indemnify Dr. Levine for those damages.
By a two-to-one vote, the court of appeal affirmed the judgment that awarded Dr. Levine $300,000 in damages and the judgment requiring the Bank to reimburse Dr. Levine for his attorney's fees. Levine v. First National Bank of Commerce, 05-0106, 05-0107, 05-0108, (La.App. 5 Cir. 12/27/05), 917 So.2d 1235 (Levine III). The matter was remanded to the trial court for a determination of the amount of attorney's fees.
Judge Daley dissented from the majority's ruling on the damage award, finding that under federal law, the bond for deed activated the due-on-sale clause of Dr. Levine's mortgage and, thus, allowed the foreclosure.
The Bank and the Carraras filed applications for writs, which this court granted. Levine v. First National Bank of Commerce, 06-0394, 06-0439 (La.6/2/06), 929 So.2d 1237.

DISCUSSION
The Bank's foreclosure was grounded on the proposition that Dr. Levine breached the terms of the mortgage agreement by transferring an interest in the secured property pursuant to a bond-for-deed contract.[4] Two assertions form *1057 the crux of the Bank's argument in defense of Dr. Levine's demand for damages: 1) that a sale of the entirety of the property subject to the mortgage is not necessary to trigger the due-on-sale clause in the mortgage under Louisiana law; and 2) that Louisiana's substantive law interpreting the effect of a bond for deed is subject to certain preemptive provisions of federal law dealing with the application of the due-on-sale clause.[5] We agree with the Bank's assertions.
*1058 Interests transferred
It is undisputed that the mortgage instrument which contains the agreement between the Bank and Dr. Levine is identified as a "Louisiana-Single Family-FNMA/FHLMC Uniform Instrument," form 3019 1/91, Amended 5/91. Clause 17 of the document executed by the Bank and Dr. Levine reads in pertinent part:
Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. [Emphasis supplied.]
Clearly, in the above clause, the creditor's right to accelerate the debt and demand payment in full of the outstanding obligation is not restricted to the sale of the entire property subject to the mortgage. Instead, the creditor's rights apply in the case of transactions in which (1) "any part" of the mortgaged property, or (2) "any interest" in the property, or (3) a "beneficial interest" in the borrower when the borrower is not a natural person is (a) sold or (b) transferred.
Further, the parties do not dispute that Dr. Levine and the Carraras entered into a bond for deed pursuant to LSA-R.S. 9:2941, et seq.[6] In Louisiana, a bond for deed is defined as "a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." (Emphasis supplied.) LSA-R.S. 9:2941. In turn, a contract to sell pursuant to Louisiana civil law gives the parties the right to demand specific performance.[7] LSA-C.C. art. 2623.
*1059 Under the terms of the bond for deed executed by Dr. Levine and the Carraras, the Carraras obtained "the immediate right of exclusive possession of the herein described Property." The "contract is binding and heritable upon the heirs and assigns of all parties." Further, pursuant to Louisiana law, this bond for deed, which is "a contract to sell real property," conveyed to the Carraras the right to demand specific performance, i.e., the transfer of title by Dr. Levine upon the conclusion of the seven-year term of their bond-for-deed contract. Although the Levine/Carraras bond for deed did not convey full ownership, it did convey rights in the subject property, i.e., the right of immediate and exclusive possession coupled with the right to demand specific performance.[8] Thus, in the words of the due-on-sale clause previously quoted, the Levine/Carraras bond for deed "transferred" an "interest" in the property.
We conclude the Bank's first assertion that a sale of the entirety of the mortgaged property was not necessary to trigger the due-on-sale clause in the mortgage under Louisiana lawis an accurate statement of the law.
Federal law preempts Louisiana law
The Bank's next assertion is that Louisiana's substantive law interpreting the effect of a bond for deed on the due-on-sale clause in the mortgage is preempted by applicable provisions of federal law dealing with due-on-sale clauses. In his dissent in Levine III, Judge Daley observed that the majority of the panel in Levine I "interpreted federal law[ ] without a detailed analysis of the federal regulations addressing due-on-sale clauses." Levine III, 05-0106 at 3, 917 So.2d at 1248. This shortcoming was repeated in Levine III because the majority held the law of the case doctrine applied to bar its consideration of the wrongfulness of the foreclosure.
The issue of preemption derives from Article VI of the United States Constitution which provides that the "Laws of the United States . . . shall be the supreme Law of the Land." Therefore, any state law that conflicts with federal law has no effect. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). However, "[c]onsideration of issues arising under the Supremacy Clause `start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" Id., quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).
According to the unrefuted testimony of Joyce Schenewerk, former corporate counsel for the Bank, the Office of the Comptroller of the Currency (OCC) is the primary regulator of all national banks and has the authority to regulate all bank activities. Multi-state operations increase the importance of a national banking law framework. If a national regulatory framework were absent, banks would be subject to the laws of each state and municipal jurisdiction in which they operate, creating a patchwork of rules that *1060 would hamper the banking industry's day-to-day operation.[9]
In its argument concerning preemption, the Bank has cited three provisions of federal law which clearly manifest the intent of Congress that federal law should supersede Louisiana law regarding the triggering of the due-on-sale clause.
First, the National Housing Act, 12 U.S.C.A. § 1701, et seq., as amended by the Garn-St. Germain Depository Institutions Act of 1982 provides, in pertinent part:

Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may . . . enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.
[T]he exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract. [Emphasis supplied.]
12 U.S.C.A. §§ 1701j-3(b).
As previously indicated, a "due-on-sale clause" is defined as a contract provision which authorizes a lender, at its option, to declare the entire debt due if all or any part of the property or "an interest" therein is "sold or transferred" without the lender's prior written consent. 12 U.S.C.A. § 1701j-3(a)(1).[10] The statute defines "lender" as a person or government agency making a real property loan, or any assignee or transferee thereof. 12 U.S.C.A. § 1701j-3(a)(2). "Real property loan" is defined as a loan, mortgage, advance, or credit sale secured by a lien on real property. 12 U.S.C.A. § 1701j-3(a)(3). The Federal Home Loan Bank Board is authorized to issue rules and regulations implementing the provisions of the statute. 12 U.S.C.A. § 1701j-3(e)(1).
Next, acting on the above statutory grant of regulatory authority, federal regulators issued Part 591 of Title 12 of the Code of Federal Regulations, which clearly states the purpose of the regulation, as follows:
The purpose of this permanent preemption of state prohibitions on the exercise of due-on-sale clauses by all lenders, whether federally- or state-chartered, is to reaffirm the authority of Federal savings associations to enforce due-on-sale clauses, and to confer on other lenders generally comparable authority *1061 with respect to the exercise of such clauses. [Emphasis supplied.]
12 C.F.R. § 591.1(b). The regulation further provides that for purposes of the exercise of a due-on-sale clause,

sale or transfer means the conveyance of real property of any right, title or interest therein, whether legal or equitable, whether voluntary or involuntary, by outright sale, deed, installment sale contract, land contract, contract for deed,[[11]] leasehold interest with a term greater than three years, lease option contract or any other method of conveyance of real property interests. [Emphasis supplied.]
12 C.F.R. § 591.2(b).
By definition, a "lender" includes national- or state-chartered banks, and any assignee or transferee thereof. 12 C.F.R. § 591.2(g). A lender is authorized to include a due-on-sale clause in its loan/mortgage instruments and to enforce such clauses in accordance with the contract terms. 12 C.F.R. § 591.4(b). The regulations explicitly state that the right to enforce a due-on-sale clause shall be "in preemption of and without regard to any limitations imposed by state law." 12 C.F.R. § 591.5(a).
Finally, by OCC regulations issued as a companion to those found in Part 591 of the C.F.R., national banks are specifically authorized to make or acquire real property loans, secured by a lien on the property, which contain a due-on-sale clause; banks are authorized to enforce such clauses "notwithstanding" any state law limitations to the contrary. 12 C.F.R. *1062 § 34.5. As was the case in Part 591, the due-on-sale clause is triggered by a broad range of transactions "if all or part of the legal or equitable title or an equivalent contractual interest in the property securing the loan is transferred to another person, whether by deed, contract or otherwise." 12 C.F.R. § 34.2.
Congressional intent concerning preemption may be expressed explicitly or implicitly in the law. Cipollone, 505 U.S. at 516, 112 S.Ct. at 2617. Nevertheless, "[w]hen Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of legislation." (Quotation marks and citations omitted.) Cipollone, 505 U.S. at 517, 112 S.Ct. at 2618. Thus, the explicit language of the federal codal provisions and regulations quoted above precludes our inquiry into implied preemption. King v. Collagen Corporation, 983 F.2d 1130, 1134 (1st Cir.), cert. denied, 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).
Dr. Levine responds to the Bank's reliance on federal preemption by arguing that any preemption of due-on-sale clauses does not reach foreclosure proceedings, which remain subject to state regulations. Plaintiff quotes, "[T]he States have created diverse networks of judicially and legislatively crafted rules governing the foreclosure process, to achieve what each of them considers the proper balance between the needs of lenders and borrowers." BFP v. Resolution Trust Corporation, 511 U.S. 531, 541-542, 114 S.Ct. 1757, 1763, 128 L.Ed.2d 556 (1994).[12] Throughout this litigation, both Dr. Levine and the Carraras have maintained that state remedies are not preempted because of the inherent unfairness of a lending institution foreclosing on a "performing" loan, i.e., a loan that was never in default because the payments specified in the mortgage continued to be paid by the transferees in the bond for deed. In brief to this court, Dr. Levine avers:
Neither Dr. Levine nor the Carraras ever (I) missed or failed to pay on time a payment on the Bank Mortgage, (ii) failed to keep insurance on the property, or (iii) failed to maintain the House. Never before had the Bank foreclosed on a performing loan where the sole reason for foreclosure was the entry of the mortgagor into a bond-for-deed agreement. Never before had the Bank even discovered that a mortgagor had entered into a bond-for-deed agreement without some outside agency informing them of that occurrence.[13]
*1063 On the surface plaintiffs' argument casts the Bank's actions in an unappealing light, but the argument ignores the need for a uniform enforcement of due-on-sale clauses available to national banks in the various states. Unlike the situation involving bankruptcy regulations, the situation here involving federal laws relating to due-on-sale clauses demonstrates an innate need for uniform enforcement. Schenewerk explained at trial the Bank's use of Clause 17 in the Bank's mortgage document, a uniform provision contained in a nationally-standardized agreement, and why such provisions are required and enforceable under federal law:
[E]very mortgage that's signed in the United States that is sold into the secondary marketwhen your mortgage is sold to either an investor or Ginnie Mae or Fannie Mae, one of the government agenciesthose mortgages have the best interest rates and the best payment terms. But the reason is the federal government subsidizes that program and keeps it going. And the way to keep it going in a national economy is to have one mortgage, even though we have fifty (50) states. And all fifty (50) states are different. No[ ] two (2) of them are the same. So, the way this works is everybody knows when they look at this mortgage, it says "Fannie Mae/Freddie Mac Uniform Instrument" on the bottom. It can be sold nationally. It can be packaged with mortgages from Alaska and people will know what it says and what it means. So, there are these twenty (20) uniform provisions that are the same everywhere. Everybody has got to pay taxes and keep insurance. . . . [T]hese mortgages make it possible for every homeowner in this country to afford a home, to buy a home, and to make payments for thirty (30) years. So, that's why it is a uniform document. And it's dictated, not by the lenders, but by Fannie Mae and Freddie Mac, the federal government.
Schenewerk's explanation is consistent with the reasons for maintaining uniformity in the banking industry stated by the United States Supreme Court in Fidelity Federal Savings and Loan Association v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). The Court noted that restrictions on a lender's ability to accelerate a loan upon transfer of the security would have a number of adverse effects, namely:
(1) that the "financial security and stability of [the lender] would be endangered if . . . the security property is transferred to a person whose ability to repay the loan and properly maintain the property is inadequate"; (2) that "elimination of the due on sale clause will cause a substantial reduction of the cash flow and net income of [the lender], and that to offset such losses it is likely that the [lenders] will be forced to charge higher interest rates and loan charges on home loans generally"; and (3) that "elimination of the due on sale clause will restrict and impair the ability of [the lender] to sell their home loans in the secondary mortgage market, by making such loans unsalable or causing them to be sold at reduced prices, thereby reducing the flow of new funds for *1064 residential loans, which otherwise would be available."
Id., 458 U.S. at 146, 102 S.Ct. at 3019, quoting People v. Coast Federal Sav. & Loan Assn., 98 F.Supp. 311, 316 (S.D.Cal. 1951).
It is suggested that due-on-sale clauses actually benefit home buyers generally because:
restrictions on due-on-sale clauses generally help existing homebuyers to the disadvantage of new homebuyers. Due-on-sale restrictions also encourage risky lending practices, outside the realm of the traditional mortgage credit delivery system, which intensify default risks. Finally, studies have concluded that these restrictions may lead to the complete disappearance of that traditional mainstay of American homeownersthe long-term fixed rate mortgage.
Senate Report (Banking, Housing and Urban Affairs Committee), S.Rep. 97-536 at 20-21 (1982), reprinted in, 1982 U.S.C.C.A.N. 3054, 3074-75.
According to some authors, home buyers also benefit from the efficient operation of the secondary mortgage market, which requires uniform enforcement of due-on-sale clauses. Residential mortgages are routinely packaged by the lender (called a "mortgage banker") and sold to a secondary market "securitizer"frequently Fannie Mae or Freddie Macor to other financial institutions for loans that do not qualify for sale to those entities.[14] As far back as the 1980s, few mortgage instruments were written without due-on-sale clauses. de la Cuesta, 458 U.S. at 155 n. 10, 102 S.Ct. at 3023 n. 10. "The Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association . . . require, in the mortgages they buy, either a due-on-sale clause or a provision enabling the lender to demand payment of the loan in seven years. The marketability of a mortgage in the secondary market is critical to a [lender], for it thereby can sell mortgages to obtain funds to make additional home loans." Id.
While a due-on-sale clause would seem to be repugnant to one's right to transfer one's property to whomever he or she wished, this right is limited because of the detrimental impact on others, especially in the secondary mortgage market. As articulated in the codal provisions and regulations previously cited, Congress has clearly adopted a policy to limit one's right to transfer one's property that is encumbered by a mortgage with a due-on-sale clause, so as to make mortgages more readily transferable in the secondary mortgage market. While this policy can be debated in the halls of Congress, it is our obligation to apply laws as written and to respect Congress's intent regarding policy decisions. Placing a limit on one's ability to transfer one's property encumbered by a mortgage containing a due-on-sale clause, in theory, serves a greater good by fostering the secondary market and, in the long run, making home loans more affordable for everyone. Thus, preemption by federal law is necessary to preclude attempts by various states to limit enforcement of due-on-sale clauses by depriving lenders of the flexibility of accelerating the loans solely at the lenders' option. See Clause 17, supra: "Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument."
We are constrained to find that federal law preempts state law concerning *1065 the foreclosure by the Bank in the instant case. Indeed, a contrary conclusion would violate the Supremacy Clause of the United States Constitution and the actual exercise by the federal government of its preemptive authority, as noted in a 1982 pronouncement of the United States Supreme Court. "The relative importance to the [s]tate of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." de la Cuesta, 458 U.S. at 153, 102 S.Ct. at 3022.
In the instant case, because of the clear and explicit language of the federal provisions which refer to "contracts for deed" and a broad range of transactions within the kinds of conveyances that trigger due-on-sale clauses, we conclude a due-on-sale clause would be enforceable in this state even if Louisiana law were to provide to the contrary. The restriction on the Bank's right to exercise its option to accelerate the loan because of the bond for deed is no less a restriction than a state statute because the restriction arose from a money judgment against the Bank for wrongful seizure rather than by a specific statute restricting the Bank's ability to execute on the due-on-sale clause to cases in which its security is impaired. According to the terms of the due-on-sale clause included in the mortgage at issue here, the clause was triggered by the bond-for-deed transfer of an interest in the mortgaged property according to federal law, which preempts any state statute or judicial decision to the contrary. "As judges, it is neither our function, nor within our expertise, to evaluate the economic soundness" of the federal regulatory provisions that preempt state law. de la Cuesta, 458 U.S. at 169-170, 102 S.Ct. at 3031.
When our two conclusions are combinedi.e., that the bond for deed transferred an interest in the property and that federal law regarding the triggering of the due-on-sale clause preempts state lawit is clear that the Bank's seizure of the property was not wrongful. Thus, Dr. Levine was not entitled to damages for wrongful seizure. See Moore v. Louisiana Bank & Trust Company, 528 So.2d 606 (La.App. 2 Cir.), writ denied, 531 So.2d 269 (1988) (Plaintiff must show illegal conduct accompanying seizure in order to obtain damages.); Sims v. Matassa, 200 So. 666, 668 (La.App. 1 Cir.1941) (Seizure was not wrongful because the creditor had reasonable grounds to believe the debtor was married and the property belonged to the community.)
LUTPA claim
The court of appeal also affirmed an award to Dr. Levine of attorney's fees pursuant to the jury's finding of the Bank's violation of LUTPA. A cause of action for unfair trade practices is governed by the provisions of LUTPA, LSA-R.S. 51:1401, et seq. Louisiana Revised Statutes 51:1405(A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." This legislation is broadly and subjectively stated and does not specify particular violations. Rather, what constitutes an unfair trade practice is determined by the courts on a case-by-case basis. Jarrell v. Carter, 577 So.2d 120, 123 (La.App. 1 Cir.), writ denied, 582 So.2d 1311 (1991). "[A] practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." Roustabouts, Inc. v. Hamer, 447 So.2d 543, 548 (La.App. 1 Cir.1984), citing Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153 (La.App. 2 Cir.1981); National Oil Service of Louisiana, Inc. v. *1066 Brown, 381 So.2d 1269 (La.App. 4 Cir. 1980). To allow Dr. Levine to pursue a claim pursuant to LUTPA would enable him to circumvent federal law and impede the Bank's right to utilize the due-on-sale clause.
Our finding that the Bank's seizure of Dr. Levine's property was not wrongful eliminates any basis for the Bank's liability to Dr. Levine pursuant to LUTPA.

CONCLUSION
We have concluded that the Bank cannot be liable to Dr. Levine for damages because damages for wrongful seizure are allowed only after an illegal seizure. The Bank's seizure of Dr. Levine's property was not illegal because the Bank accelerated its loan pursuant to Clause 17, the due-on-sale clause in its mortgage agreement. The due-on-sale clause was triggered when, via the bond for deed, Dr. Levine transferred an interest in the property, such as exclusive possession and the right to specific performance of the transfer of title.
Due-on-sale clauses in mortgages are not newly created features of security devices, as indicated by the authorities previously cited. Due-on-sale clauses are federally protected provisions in the mortgage agreements of national banks. Even if we were inclined to agree with the plaintiffs that the Bank should have been precluded from executing on the due-on-sale provision because this was a performing loan, this area of the law has been preempted by federal regulations.
Thus, we reverse the judgment in favor of Dr. Levine and against the Bank, and we dismiss Dr. Levine's suit for damages with prejudice.
The Carraras filed for certiorari urging this court to reverse the judgment of the court of appeal which dismissed their claim against Dr. Levine. We granted certiorari in order to have the entire case before us. However, in light of our decision regarding Dr. Levine's claims against the Bank, we see no reason to disturb the results reached by the court of appeal on the Carraras' claim. Accordingly, we recall the writ grant in Number 06-C-0439.
06-C-0394 REVERSED IN PART AND AFFIRMED IN PART.
06-C-0439 WRIT RECALLED.
KIMBALL, Justice, concurs with reasons.
KIMBALL, Justice, concurring.
While I agree the due-on-sale clause was triggered under Louisiana law, I believe such a finding precludes a determination that federal law preempts Louisiana law in this case. As noted by the majority, the doctrine of preemption provides any state law that conflicts with federal law has no effect. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Under the facts of the instant case, no conflict exists. Federal law provides, "Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan." 12 U.S.C. § 17j-3. Similarly, 12 CFR § 591 states:
The purpose of this permanent preemption of state prohibitions on the exercise of due-on-sale clauses by all lenders, whether federally or state chartered, is to reaffirm the authority of Federal Savings Associations to enforce due-on-sale clauses, and to confer on other lenders generally comparable authority with respect to the exercise of such clauses.
*1067 Thus, under federal law, lenders have the authority to enforce due-on-sale clauses, despite the existence of state law prohibiting due-on-sale clauses. Here, however, Louisiana law does not prohibit the exercise of the due-on-sale clauses, as this court specifically found the due-on-sale clause was actually triggered in this case under the terms of the mortgage agreement. Hence, Louisiana law clearly does not prohibit the exercise of the due-on-sale clause under the facts of this case. Accordingly, Louisiana law does not conflict with federal law, and federal preemption does not occur. While in my view the preemption discussion is unnecessary to the resolution of the opinion, I believe the majority has reached the correct result.
NOTES
[1] First National Bank of Commerce was merged into Bank One, NA, which, in turn, was merged into JP Morgan Chase.
[2] A due-on-sale clause is defined as "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C.A. § 1701j-3(a)(1)(1982).
[3] See Levine v. First National Bank of Commerce, 02-1114, p. 4 n. 2 (La.App. 5 Cir. 4/29/03), 845 So.2d 1189, 1192 n. 2.
[4] The status of the foreclosure proceedings sued upon was an issue that complicated the jury trial and the appeal of the judgment rendered pursuant to the jury verdict. During the opening statement of counsel for the Bank, counsel for plaintiff objected to references to the issue of the wrongfulness of the seizure. At a bench conference, counsel for the Bank urged the court to allow him to argue to the jury the propriety of the seizure. The judge ruled against him, emphatically finding that the wrongfulness of the seizure had previously been determined and stating he would not allow the jury to make any finding on the issue of the wrongfulness of the seizure. Thereafter, still during the opening statements, the trial judge decided to take it upon himself to instruct the jury that the issue of wrongful seizure had already been determined and that the jury was to limit its deliberations to the amount of damages to be awarded for the wrongful seizure and to the alleged violation of LUTPA. In light of the facts and circumstances contained in this record, we conclude the Bank has continuously maintained the Bank's seizure was not wrongful until prevented from doing so by the trial judge, and the Bank properly preserved the issue of whether the seizure was wrongful. Furthermore, evidence of the Bank's justification for seizing the property was submitted to the jury because of the plaintiff's LUTPA claim. Thus, the evidence of whether the seizure was wrongful is in the record and is available for our review.

On appeal, the majority of the court of appeal held that its previous ruling on the issue of the wrongfulness of the seizure had become the law of the case and the trial court was correct in not allowing the issue to be litigated again.
Further, in this court, Dr. Levine argues that the issue of wrongful seizure is res judicata, and, thus, this court should not reach the merits of the issue of a transfer of an interest in the property or the merits of the issue of preemption by federal law. These arguments are without merit.
First, a denial of a writ by this court to review the lower courts' rulings on the injunction did not become the law of the case in this court. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and it does not bar consideration of the issue denied supervisory review when trial on the merits is had and an appeal is taken from a final judgment. First Financial Bank, FSB v. Boue, 541 So.2d 947, 950 (La.App. 5 Cir. 1989). Thus, the ruling denying supervisory writs does not (as argued) bar reconsideration of the issue on appeal nor the reaching of a different conclusion. State v. Smith, 322 So.2d 197, 204 n. 2, (La.1975), citing Gulf States Utilities Company v. Dixie Electric Membership Corp., 248 La. 458, 179 So.2d 637 (1965), and Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655 (1929). The law of the case principle is not applied to prevent a higher court from considering the correctness of a ruling by an intermediate appellate court. Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 7 (La.5/10/96), 673 So.2d 585, 589, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996).
In the instant case, the first decision by the appellate court, Levine I, merely affirmed the decision of the district court to grant the preliminary injunction which halted the foreclosure by the Bank. A preliminary injunction is a procedural device, interlocutory in nature, designed to preserve the existing status pending a trial of the issues on the merits of the case. LSA-C.C.P. art. 3601; Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161 (La.1979); see also, Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267, 1272 (La.1981) (A preliminary injunction is only provisional and is not intended as a resolution of the merits of a controverted issue.) The principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit issues. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979). In the instant case, there was no decision on the merits until judgment was rendered by the trial court pursuant to the jury verdict, which judgment was affirmed in Levine III.
Thus, we hold that this court is not barred from considering the merits of Dr. Levine's claim for damages, which holding leads us to pretermit discussion of the res judicata effect of the previous judgments. Nevertheless, we note that Dr. Levine's argument concerning the alleged application of res judicata cannot be raised for the first time in this court. The peremptory exception of res judicata must be specially pled. LSA-C.C.P. art. 927; Minvielle v. Minvielle, 00-1039, 00-1041, p. 3 (La. App. 5 Cir. 11/15/00), 776 So.2d 1223, 1225, writ denied, 00-3421 (La.2/9/01), 785 So.2d 823 (The exception of res judicata must be presented in a formal pleading and cannot merely be argued in brief.)
[5] Although preemption of state law by federal law ordinarily would render unnecessary any discussion of other issues, such as the transfer of a property interest upon the execution of a bond for deed, the plaintiffs' contentions that a Louisiana bond for deed does not transfer an interest in the property until the transferees attain title to the property prompts us to address this issue prior to addressing the preemption issue.
[6] The parties do dispute the applicability of LSA-R.S. 9:2942, which provides:

It shall be unlawful to sell by bond for deed contract, any real property which is encumbered by mortgage or privilege without first obtaining a written guarantee from the mortgage and privilege holders to release the property upon payment by the buyer of a stipulated mortgage release price, with which agreement the secured notes shall be identified. The agreement shall be recorded in the mortgage records of the parish where the property is situated before any part of the property is offered for sale under bond for deed contracts. The provisions of this Part likewise shall apply to any property offered for sale by bond for deed contract which may be subsequently mortgaged or encumbered by a privilege.
Although the statute appears directly on point, this court has held that "the unmistakable purpose and clear intent of the statute is to make secure and to safeguard a vendee of mortgaged property from fraud, deceit and misrepresentations." Scott v. Apgar, 238 La. 29, 37, 113 So.2d 457, 459 (1959) (The primary question was whether the contract entered into between the parties was null ab initio as a result of plaintiff's failure to have first obtained from the mortgage holder the written guarantee prescribed by the statute.) We pretermit any decision regarding the applicability of LSA-R.S. 9:2942 under the facts of this case, as any illegality of the bond for deed is not at issue here, only the alleged illegality of the seizure of the property. See discussion of this issue hereinafter.
[7] We note a contract to sell does not specifically grant an immediate possessory interest. LSA-C.A. art. 2623. "[O]wnership and risk remain with the vendor, since a contract to sell does not effect a transfer of ownership." Id., Revision Comments, 1993. Nevertheless, we express no opinion as to whether a contract to sell, as opposed to a bond for deed, triggers a due-on-sale clause.
[8] Even a leasehold interest with a term greater than three years, according to 12 C.F.R. § 591.2(b), constitutes a transfer of an interest in the property. If a lease for a term greater than three years, which allows possession of the property but not a right to acquire full ownership of the property, triggers a due-on-sale clause, then, a fortiori, a possessory interest such as the Carraras acquired in the bond for deed at issue here, coupled with their right to obtain full ownership, constitutes a transfer of an interest in the property which triggers the due-on-sale clause.
[9] Before 1982, many states restricted the operation of due-on-sale clauses or prohibited the clauses altogether because to allow lenders to require refinancing of the property upon sale or transfer by the mortgagor was an unreasonable restraint on the alienability of the property. Jo Anne Bradner, The Secondary Mortgage Market and State Regulation of Real Estate Financing, 36 Emory L.J. 971, 1003-1004 (1987). In 1982, the United States Supreme Court held that a regulation of the Federal Home Loan Bank Board (FHLBB) that authorized federal savings and loan associations to include due-on-sale clauses in their mortgage forms preempted conflicting state laws. Fidelity Federal Savings and Loan Association v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). The result of that opinion was that savings and loans associations could enforce the clauses even where lenders not under FHLBB regulation could not. This situation led to Congress's passage of the Garn-St. Germain Depository Institutions Act which extended a sweeping preemption of state law concerning due-on-sale clauses to lenders previously unprotected from state restrictions. Bradner, 36 Emory L.J. at 1004.
[10] Because Clause 17 of Dr. Levine's mortgage to the Bank is a standardized provision, the language therein is virtually the same as in this codal provision.
[11] In his dissent, Judge Daley explained that "contract for deed" and "bond for deed" are synonymous:

Since a "bond for deed" is not specifically identified in [12 C.F.R. § 591.2(b)] the Court must determine if the bond for deed instrument falls within the definitional criteria of the federal regulations. The Bank takes the position that the bond for deed, in this case, is in fact a "contract for deed," which pursuant to 12 C.F.R. § 591.2(b) activates the due-on-sale clause. Black's Law Dictionary defines a contract for deed as:
An agreement by a seller to deliver the deed to the property when certain conditions have been met, such as completion of payments by purchaser.
Bond for deed is defined by La. R.S. 9:2941 as:
a contract to sell real property in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.
A contract for deed is frequently called a bond for deed. "The so-called `bond for deed' contract is the conditional sale of an immovable. . . . [T]he bond for deed contract, as generally utilized by Louisiana attorneys, is no more than a conditional sale. . . ." In Louisiana Practice Series; Louisiana Real Estate Transactions, the author comments:
The bond for deed has been used in some cases to circumvent a lender's right to accelerate the mortgage loan upon the transfer, since a bond for deed does not transfer title to the mortgaged property. The execution of a bond for deed is, however, considered a sale or transfer under 12 C.F.R. § 591.1, et seq., which preempts Louisiana law. Under 12 C.F.R. § 591.2(b) a sale or transfer includes a conveyance of real property by contract for deed. Thus, a lender may enforce a due on sale clause if the borrower executes a bond for deed contract even though the borrower retains legal title until the purchaser's completion of payments.
The Louisiana definition of bond for deed and the above cited authority suggest that the document entitled bond for deed executed by Dr. Levine is a contract for deed.
. . . [T]he bond for deed instrument contractually accomplishes the exact same thing as a contract for deed or an installment land contract and therefore under the federal regulations clearly is the type of instrument that triggers a due-on-sale clause. [Citations and footnotes omitted.]
Levine III, 05-0106 at 4-6, 917 So.2d at 1249-1250.
[12] There is a distinction between the federal laws relied on by the Bank in the instant case and the issue of preemption considered in BFP. That case involved a Chapter 11 debtor that brought a fraudulent transfer proceeding to avoid a mortgage foreclosure sale on the theory that the price received at the mortgage foreclosure sale was less than the "reasonably equivalent value" of the property. The Supreme Court held that the price received conclusively established "reasonably equivalent value," as long as requirements of the state's foreclosure law were met. In BFP, "an essential state interest" was involved: the security of the titles to real estate. The Court noted that if preemption were to apply, "[t]he title of every piece of realty purchased at foreclosure would be under a federally created cloud. . . . To displace traditional state regulation in such a manner, the federal statutory purpose must be clear and manifest. Otherwise, the Bankruptcy Code will be construed to adopt, rather than to displace, preexisting state law." (Quotation marks and citations omitted.) BFP, 511 U.S. at 544-545, 114 S.Ct. at 1765.
[13] In Fidelity Federal Savings and Loan Association v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the plaintiffs were purchasers of property in California encumbered by deeds of trust. They brought actions against the lender seeking a judicial declaration that the due-on-sale clause was not enforceable unless the lender first showed that the transfer had harmed its security interest. The United States Supreme Court struck down a California statute that barred enforcement of the due-on-sale clause unless the lender could demonstrate that enforcement of the clause was reasonably necessary to protect against impairment to its security or the risk of default.
[14] For discussion of the development and importance of the secondary mortgage market, see Robin Paul Malloy, The Secondary Mortgage Market: A Catalyst for Change in Real Estate Transactions, 39 Sw.L.Rev. 991 (1986); Jo Anne Bradner, The Secondary Mortgage Market and State Regulation of Real Estate Financing, 36 Emory L.J. 971 (1987).