# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-242

**KENNETH JOHN LECOMPTE, ET UX.**

**VERSUS**

**AFC ENTERPRISES, INC.**

**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## SIXTEENTH JUDICIAL DISTRICT
## PARISH OF ST. MARTIN, DOCKET NO. 72391-E
## HONORABLE KEITH R. J. COMEAUX, PRESIDING
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters and John E. Conery, Judges.

**AFFIRMED.**

Stan Gauthier, II
Michael G. Johnston, II
1405 W. Pinhook Rd., Suite 105
Lafayette, LA  70503
(337) 234-0099
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
    Kenneth John LeCompte and Joanne Mathas LeCompte

Edmond L. Guidry, III
Guidry & Guidry
324 South Main Street
St. Martinville, LA  70582
(337) 394-7116
**ATTORNEY FOR DEFENDANT/APPELLEE**
    AFC Enterprises, Inc.

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Kenneth John LeCompte, was the principal, sole shareholder and director of Atchafalaya Enterprises, Ltd., a Louisiana business corporation that owned and operated two Popeyes Restaurants located in Henderson and St. Martinville, Louisiana. This litigation stems from a failed attempt to acquire additional Popeyes Restaurants in the surrounding area. LeCompte, his wife Joanne, and Atchafalaya were named plaintiffs in the suit.

Plaintiffs stated on December 7, 2004, correspondence was received from AFC which set forth that AFC was hoping to accelerate the development and growth of the Popeyes brand throughout the country, including the region in which Plaintiffs operated the St. Martinville and Henderson locations. The correspondence in question was not personalized to Plaintiffs, but was addressed to all "Popeyes Franchise Operator[s]". Plaintiffs sought to acquire additional Popeyes' franchises in Scott, Maurice, and Duson, Louisiana.

Plaintiffs maintain on a January 26, 2006 phone conference with James Lyons, AFC's Chief Development Officer, LeCompte was told by Lyons that AFC had denied the request to enter into a development agreement for new Popeyes Restaurants. LeCompte was told AFC "did not want to grow with LeCompte with a new store." LeCompte specifically asked why AFC denied his request, but he was only told AFC was not interested in growing with him. In correspondence dated November 14, 2006, AFC similarly stated "we are not interested in considering the LeComptes for growth in the POPEYES system. . . ."

Shortly after the receipt of the November 14, 2006 letter, LeCompte received a business proposition from Stanley Ware, another Popeyes' franchisee. Ware offered to sell and transfer to Plaintiffs his two Popeyes' franchises in

Broussard, Louisiana and Breaux Bridge, Louisiana. Concerned about AFC's stated position regarding his acquisition of new franchises, LeCompte requested his attorney ascertain AFC's position regarding Plaintiffs' desire to acquire existing franchises. LeCompte received a letter from Lyons stating it was not interested in considering Plaintiffs for "growth in the POPEYES system at this time, whether through acquisition of existing franchises currently operated by other franchisees of the POPEYES system or new development."

Plaintiffs believed the refusals by AFC were the result of prior litigation instituted by them against AFC. That litigation was resolved in Plaintiffs' favor after a mediation conference. According to Plaintiffs, this occurred despite being assured at the conclusion of the mediation by John E. Fajfar, AFC's Vice President of New Business Development, that the litigation would not adversely affect their ability to acquire additional restaurants.

The LeComptes filed a lawsuit against AFC, James Lyons and Stanley Ware, claiming those defendants had improperly denied Plaintiffs the opportunity to acquire additional or existing franchises.[1] Specifically, it was asserted that AFC's refusal to "grow with" Plaintiffs by granting additional franchises or approving the sale of existing restaurants, amounted to a violation of Louisiana's Unfair Trade Practices Act (LUPTA) and was a violation of the abuse of rights doctrine. AFC filed exceptions of no right of action, no cause of action and a motion for summary judgment. The district court granted AFC's exception of no right of action and gave Plaintiffs time to amend the pleadings to add Atchafalaya Enterprises, Ltd. as a plaintiff and took the other matters under advisement.[2] The

---

[1] Lyons was dismissed from the suit on an Exception of Lack of Jurisdiction and the claims against Ware were separated upon the grant of an Exception of Improper Cumulation of Actions. Writs taken on the judgments granting the exceptions were denied by this court.

[2] Atchafalaya Enterprises, which as set forth above is wholly owned by LeCompte, is the actual, named franchisee of the St. Martinville Popeyes Restaurant.

3

parties were allowed time to attempt to reach a settlement. In the interim, the LeComptes filed an amending and supplemental petition adding Atchafalaya as a plaintiff. After informing the court they were unable to reach a settlement, the district court issued reasons for judgment granting AFC's motion for summary judgment and exception of no cause of action dismissing Plaintiffs' claims. Plaintiffs filed a devolutive appeal which was rejected by this court because Atchafalaya was added as a party after the motion for summary judgment and exception were filed. Upon remand, AFC again filed a motion for summary judgment and exception of no cause of action against both the LeComptes and Atchafalaya. By judgment dated September 17, 2012, the district court again granted AFC's motion for summary judgment and exception of no cause of action dismissing Plaintiffs' claims. This appeal followed, wherein Plaintiffs contend the trial court erred in granting both the exception of no cause of action and motion for summary judgment.

## ANALYSIS

*I.    Exception of No Cause of Action.*

A peremptory exception of no cause of action presents a question of law which an appellate court will review de novo. *Hawkins v. Evangeline Bank & Trust Co.*, 01-1292 (La.App. 3 Cir. 2/06/02), 817 So.2d 141, *writ denied*, 02-658 (La. 5/24/02), 816 So.2d 308. No evidence is introduced to support or controvert the exception. Rather, the exception is tried on the face of the petition, with supporting documentation. For the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. La.Code Civ.P. art. 931; *City of New Orleans v. Bd. of Comm'rs*, 93-690 (La.7/5/94), 640 So.2d 237; *Hawkins*, 817 So.2d 141. This exception is designed to test the legal sufficiency of the petition to determine whether the plaintiff is

4

afforded a remedy in law based on the facts alleged in the petition. *Everything on Wheels Subaru, Inc. v. Subaru South Inc.*, 616 So.2d 1234 (La.1993); *Hawkins*, 817 So.2d 141.

AFC's exception of no cause of action addressed the allegation made by Plaintiffs that AFC breached its contract with Ware by unreasonably denying the sale and transfer of Ware's two franchises to them, and that Plaintiffs were third party beneficiaries under a stipulation *pour autri* contained in the contract. A review of the district court's reasons for judgment issued on August 22, 2012, in response to AFC's Motion for Reconsideration reveal the district court sustained the exception of no cause of action on the basis there was no evidence to show that Plaintiffs were a party to the Ware/AFC contract, and thus no stipulation *pour autri* existed. The district court noted "the contract specifically provides that the provisions of the contract are personal to the franchisee – in this instance, Stan Ware, not plaintiffs." We agree with the district court's reasoning.

Plaintiffs were was not parties to Ware's franchise agreements with AFC; thus, they have no standing to assert a claim that AFC was unreasonable in refusing to approve the sale of the franchises from Ware to Plaintiffs. There is a provision in the AFC contract with Ware stating that AFC cannot unreasonably withhold its consent to the transfer of *Ware's* franchises to another party. As AFC noted below, that provision is specific to the transferor franchisee, not the transferee buyor as there is no privity of contract with the proposed transferee. Such a claim must be asserted by Ware, and there is nothing in the record to indicate he has made such a claim. The district court did not err in granting the exception of no cause of action.

*II.     Motion for Summary Judgment.*

Summary judgments are reviewed *de novo* on appeal and the reviewing court is governed by the same criteria as the trial court in determining whether the mover is entitled to judgment as a matter of law. *Schroeder v. Board of Sup'rs*, 591 So.2d 342 (La.1991). Summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Summary judgments are now favored in Louisiana, and shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. La.Code Civ.P. art. 966.

The mover bears the burden of proof. Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. *Luther v. IOM Company, LLC*, 13-353 (La. 10/15/13), 130 So.3d 817. If the adverse party fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *Id.*

A cause of action for unfair trade practices is governed by the provisions of the Louisiana Unfair Trade Practices Act (LUTPA), La.R.S. 51:1401, *et seq.* In particular, La.R.S. 51:1404(A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." This legislation is "broadly and subjectively stated and does not specify particular violations." *Levine v. First Nat'l Bank of Commerce*, 06-394, p. 20 (La. 12/15/06), 948 So.2d 1051, 1065. "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *Id.*

In its motion for summary judgment, AFC noted there was never a Development Agreement entered into between itself and Plaintiffs. Without such an agreement, AFC contended it was not *obligated* to allow Plaintiffs to acquire

6

additional franchises. Plaintiffs do not dispute the lack of a Development Agreement in this case. In its petition, Plaintiffs base the claim of unfair trade practices on alleged intentional retribution by AFC against Plaintiffs for the prior litigation between the parties. However, as AFC notes, Plaintiffs have provided no facts in the petition to support the claim of intentional retribution.

Plaintiffs argued AFC acknowledged below that it intentionally retaliated against Plaintiffs for the prior litigation between the parties. As the trial court noted, this is incorrect. AFC only asserted "it would not matter *if* the decision was in part motivated by a desire to punish the LeComptes for their prior litigation so long as there was also a sound business reason for the decision." No admission was made by AFC that its decision was motivated by a desire to punish Plaintiffs.

The district court in granting the motion for summary judgment, noted the granting of a franchise is a privilege, not a right, and it is generally understood that "the franchisor reserves to itself the sole power to grant new franchises or to open new outlets as company stores." The courts have accepted the proposition that a franchisor has the right to unilaterally select those with whom they choose to engage in business. See *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984). Further, the courts have consistently refused to find a LUTPA violation when the alleged conduct was simply a "normal business relationship." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir.1994); *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La.App. 2 Cir.1988) (no LUTPA violation when conduct simply "the appropriate exercise of good business judgment and the proper workings of free enterprise.")

"[A] practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious."

7

*Levine*, 948 So.2d at 1065. To prevail on a LUFTA claim a plaintiff must "*prove some element of fraud, misrepresentation, deception or other unethical conduct.*" *Cheramie Serv. Inc. v. Shell Deepwater Prod.*, 09-1633 (La. 4/23/10), 35 So.3d 1053, 1059. The district court found Plaintiffs failed to prove any specific actions AFC committed which are violative of LUPTA. We agree.

In this case, Plaintiffs are entitled to the franchise locations they have, and AFC is bound by the franchise agreements that were signed to address operations at those locations. There have been no assertions that AFC has done anything to impede Plaintiffs' operations of those restaurants. As all parties acknowledge, there was no Development Agreement entered into for any other franchises between Plaintiffs and AFC. Without such an agreement there is no legal obligation for AFC to grant Plaintiffs additional franchise locations. Furthermore, as the franchisor AFC has the right to grant new franchises to whom it sees fit. The record is simply devoid of any proof that AFC's refusal to grant Plaintiffs' additional franchises violates any LUPTA provisions.

Similarly, Plaintiffs' abuse of rights claim is lacking. This court in *Wagner v. Fairway Villas Condominium Associates, Inc.*, 01-734, p. 6 (La.App. 3 Cir. 3/13/02), 813 So.2d 512, 518 discussed the abuse of rights doctrine, noting it "has been invoked sparingly in Louisiana," and "applies only when one of the following conditions are met:

> (1) the predominant motive for exercise of the right is to cause harm;
>
> (2) there is no serious or legitimate motive for exercise of the right;
>
> (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or
>
> (4) the exercise of the right is for a purpose other than that for which it was granted."

Plaintiffs presented no evidence that AFC's refusal to "grow with" them was motivated by a cause to harm, had no legitimate motive or was in bad faith. Without a Development Agreement, AFC simply has no legal obligation to do additional business with Plaintiffs. AFC does have an agreement with Plaintiffs involving the two franchises granted and operated by Plaintiffs; and there is no allegation that AFC has impeded Plaintiffs' operation of their two restaurants in any way. After reviewing the evidence, we do not find that any of the conditions necessary to find an abuse of right has been met.

**DECREE**

For the foregoing reasons, the judgment of the lower court is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.

**AFFIRMED.**