RAY AREVALO AND MILLENNIUM HOLDINGS, L.L.C.
v.
RONALD MENVILLE, JR., AND MILLENNIUM HOLDINGS, L.L.C.
No. 2008 CA 1642.
Court of Appeals of Louisiana, First Circuit.
February 13, 2009.
Not Designated for Publication
L. J. HYMEL, MICHAEL REESE DAVIS Counsel for Appellants, Ray Arevalo and Millennium Holdings, L.L.C.
D. BLAYNE HONEYCUTT, Co-Counsel for Appellees, Ronald L. Menville, Jr. and Millennium Holdings, L.L.C.
Before: CARTER, C.J., WHIPPLE AND DOWNING, JJ.
DOWNING, J.
Plaintiff/appellants, Ray Arevalo and Millennium Holdings, L.L.C. (collectively, Arevalo), appeal a judgment denying its motion for preliminary injunction against defendant/appellees, Ronald L. Menville, Jr. and Millennium Holdings, L.L.C.,[1] (collectively Menville). Arevalo also appeals the denial of its motion to appoint a temporary receiver over the company. For the following reasons we affirm the trial court judgment and deny Menville's motion to dismiss this appeal.[2]

FACTS AND PROCEDURAL HISTORY
Mr. Arevalo is a landscape architect who specializes in designing golf courses. Sometime in 2004, Mr. Arevalo, Jim Holmes, and Michael Scurria began the concept of a project to build Greystone Country Club & Golf Course in Livingston Parish. Later, Ronald Menville was brought in as the finance person, and Millennium Holdings, L.L.C. (Millennium Holdings) was formed. The shareholders are Arevalo, Scurria, R. Menville, his wife Susan Menville, Bryan Bienvenu, and Gorada Service, Co., Inc.,[3] In March 2005, Millennium Holdings and others formed Millennium Golf & Country Club, L.L.C. (Millennium Golf) and also formed Millennium Properties, L.L.C, (Millennium Properties). Millennium Holdings has a 70% interest in Millennium Golf and owns 100% of Millennium Properties. Mr. Arevalo owns thirty-two percent (32%) of Millennium Holdings. R. and S. Menville each own sixteen percent (16%). Mr. Scurria, Bryan Bienvenu and Gorada Services Co., Inc., own the remainder.
Millennium Properties owned the immovable property upon which Greystone was developed. Millennium Golf leases the golf course property, operates the course and the food and beverage side of the business. Millennium Holdings, Millennium Properties and Millennium Golf are all manager-managed L.L.C.'s. R. Menville, the appointed manager of Millennium Holdings, is the chief financial decision maker for all the Millennium companies.
On December 26, 2007, a petition for declaratory judgment, damages and attorney fees, was filed on behalf of Arevalo. The original prayer requested judgment: (1) declaring that R. Menville was not fit as manager of Millennium Holdings; (2) removing R. Menville as manager; (3) ordering R. Menville to reimburse Millennium Holdings and all Millennium companies for all funds or resources taken or misappropriated; and (4) awarding all damages to Millennium Holdings as are reasonable, together with interest and costs.
On January 17, 2008, an answer and reconventional demand was filed by R. Menville, denying the allegations in the petition and praying for dismissal of the petition with costs and attorney fees[4].
On February 14, 2008, Arevalo filed an answer which prayed for dismissal of R. Menville's reconventional demand and also urged the defense of prescription. On February 19, 2008, Arevalo filed an amended petition adding as defendants the other stockholders, S. Menville, Bryan Bienvenue, Gorada Service, Co., Inc., and Mr. Scurria. Additionally, a rule for contempt, sanctions, attorney fees, and costs was filed the same day wherein Arevalo sought to have R. Menville held in contempt for his purported refusal to comply with a prior discovery order that was previously issued. This rule was set for hearing on March 10, 2008.
Arevalo also filed a motion for temporary restraining order (TRO), preliminary injunction, and motion to appoint temporary receiver. The petition sought much relief including: (1) an order to show cause why a TRO should not be granted; (2) that the TRO restrain Menville and Millennium Holdings from selling, divesting, transferring, or exchanging any of the company's assets; (3) that the TRO remain in effect until the injunction was decided; and (4) an order to show cause why a temporary receiver should be appointed to manage the affairs of Millennium Holdings, L.L.C. until judgment was rendered on the merits. On February 19, 2008, after consideration of the facts alleged by Arevalo, the trial court issued a TRO and the requested orders to show cause.
These rules were heard on March 10-11, 2008. The trial court dissolved the TRO, denied the motion for preliminary injunction and denied the motion to appoint a temporary receiver. From the judgment, Arevalo appealed, alleging that the trial court abused its discretion in denying the motion for a preliminary injunction and in denying the motion to appoint a temporary receiver over Millennium Holdings.[5]

DISCUSSION

Motion for Preliminary Injunction
In Arevalo's first assignment of error, he alleges that the trial court erred in not issuing the preliminary injunction to stop R. Menville from disposing of or otherwise diluting the company's assets.
To prevail in an action for injunction, plaintiff must show that irreparable injury, loss or damage will ensue if an injunction is not granted. Conway v. Stratton, 434 So.2d 1197, 1199 (La.App. 1 Cir. 1983). Irreparable injury has been defined as injury for which an injured party cannot be compensated adequately in money damages, or for which damages cannot be measured by a monetary or pecuniary standard. Id. This Circuit has long recognized that a preliminary injunction is a procedural device, interlocutory in nature, designed to preserve the existing status quo until a determination can be made on the merits. National Pac. Corp. v. American Commonwealth Fin. Corp., 348 So.2d 735, 736 (La.App. 1 Cir. 1977).
The trial court denied the Motion for a Preliminary Injunction and pointed out that any damages caused by the alleged self-dealing are strictly pecuniary in nature and not considered subject to irreparable harm. In its written reasons, the trial court meticulously set out the basis for its ruling. The written reasons also explain the details of how Greystone came into existence and what precipitated this litigation. These reasons are summarized as follows:
R. Menville testified first. He explained that Towering Pines, L.L.C. bought the land encompassing the Greystone golf course. Various Millennium entities owned the respective portions of the project. Towering Pines owns the land under the golf course and leases it to the other Millennium entity. R, Menville testified that Millennium Holdings owns 100% of Millennium Properties and is the actual real estate developer. Millennium Holdings owns 71% of Millennium Golf Course, which leases the course from Towering Pines. The other owners are Scurria, Jim Holmes, and the Lucille Ball Trust. R. Menville explained that Greystone clubhouse was transferred to an entity named Symphony Development, L.L.C. in which he and Emmanuel Nadler each own 50%. R. Menville is paid $144,000.00 a year and also receives $1,100.00 per month car allowance. Arevalo and Scurria were each paid a salary of $75,000.00. R. Menville testified that nobody got raises or bonuses, nor has he received any loans from the company.
R. Menville identified the CBVSII Trust which was managed by an attorney from New York named Salvi. He testified that Emanuel Nadler guaranteed $10,000,000.00 total of the project's costs and that Mr. Nadler still had an outstanding guarantee of $4,000,000.00. He identified David Mason and David Hyrck as the attorneys that handled this transaction. He also said he personally pledged personal assets to secure the $350,000.00 advance to pay the impending bond. He claims that there was no written approval of the stockholders prior to pledging the personal assets. He wanted to get another $3,000,000.00 from Salvi, but when Slavi flew in to see Greystone, he decided not to invest more into the project. R. Menville then recruited Bobby Watters who owns Watco, Inc. Watco built the clubhouse, and the basis of the construction was cost plus 10%.
Aravelo testified next. Aravelo testified that he met Scurria who was spearheading a golf course development in Livingston Parish. He said that Scurria did all the legwork finding the property. He said that R. Menville was a long-time family friend and godfather to his daughter. R. Menville told Aravelo that he was the finance man for the project and asked Aravelo to be part of the operation. Aravelo said that he got the first twenty lots ready to be sold. Aravelo said that he thought R. Menville was working for the Renaissance Group at this time. The Renaissance Group was developing a 300 acre project on Juban Road called Pleasant Ridge and also developing Orange Grove in Ascension Parish. He said that these projects were bigger than Greystone. Aravelo testified that at Greystone he was in charge of demolitions, sewer, streets and drainage, as well as selling lots and meeting with engineers and utility installers. Eagle Engineering handled the engineering on the project, and R. Menville was in charge of lining up the financing. He claimed that R. Menville's management style was chaotic. For example, he said that R. Menville authorized a contractor to move dirt without a written contract and without dirt calculations. He claimed that FEMA changed the flood elevations. He was fired from the project in August 2007. Thereafter, he has tried to get records to substantiate R. Menville's mismanagement, but has been unable to do so. He said that he received a $75,000.00 salary in 2005, when the project began. He also testified that R. Menville eventually called a board meeting to go over plans to develop another tract himself. He said that R. Menville wanted to reward Mr. Nadler by having Symphony Properties, Inc. develop it. On cross examination, Aravelo admitted that he did not put up any initial front money, but contributed $140,000.00 in design efforts. He admitted that he knew it took 51% to transact any business of an L.L.C. He also admitted that he knew he needed 19% in addition to his 32% to fire R. Menville. He spoke of irregularities regarding the transfer of four lots to the Menville Trust. Later, however, he learned through the Clerk of Court's office that the lots were never transferred.
Ms. Christian Hulver testified concerning her involvement with the accounts payable and bank account reconciliation. Ms. Hulver indicated a familiarity with the money transferred among accounts. It was often moved from one account to another. It would be carried as a note payable. She explained that her request for a transfer of funds was received by e-mail since she was out of state. She would then transfer money from one account to another and enter the various notes payable and notes receivable and a note as to why it was being done. Upon cross-examination, she admitted that she was paid by Millennium Properties only. She was not paid by Symphony Properties, but she does do work for it. Symphony Properties had a bank account at the Regions Bank. Symphony Properties' only business was the clubhouse. She believes R. Menville may have made a loan to Millennium Holdings, but she wasn't sure. She testified that Symphony Properties collected over $19,000.00 per month rent on the clubhouse.
Dr. Hill, a Baton Rouge physician, also testified that he was a member of Towering Pines. He said that R. Menville was the person who recruited him to invest. He said that he told R. Menville that if he could figure out a way for it to be capital gains he might be interested in investing. He testified that he invested $250,000.00 and loaned Towering Pines an additional $100,000.00.
J.E. Brignac, a forty-five year insurance business owner, also testified. He said that Menville approached him with the investment proposition, and he contributed $250,000.00, into the Towering Pines project.
Ted York testified that he is an engineer with Alvin Fairburn and Associates. He testified that he was in charge of the bond compliance and that everything was done in accordance with the bond restrictions.
The trial court concluded that as a result of the above testimony heard over two days, and a review of the pleadings filed herein, it was obvious that Arevalo is a minority stockholder who only owns a thirty-two (32%) percent interest in Millennium Holdings, L.L.C. The trial court also stated that it was obvious that Millennium Holdings is a one-hundred-percent owner of a subsidiary L.L.C. called Millennium Properties, L.L.C. Similarly, Millennium Holdings is a seventy (70%) percent owner of Millennium Golf, the operator of the Greystone Country Club. The trial court commented that the owner of a minority interest such as the plaintiff, herein, Arevalo, is in a difficult position vis a vis Millennium Holdings.
A preliminary injunction is only provisional and is not intended as a resolution of the merits of the controverted issue. The principal demand is to be determined on the merits only after a full trial under ordinary process. Levine v. First National Bank of Commerce, 06-0394, p. 7 (La. 12/15/06), 948 So.2d 1051, 1056 n.4. The trial court ruled that Arevalo will have an opportunity to address his allegations via ordinary proceedings. Considering the trial court's cogent and extensive reasons, we conclude that the trial court did not abuse its discretion in making this determination. Accordingly, this assignment of error is without merit.

Motion to Appoint a Temporary Receiver
In Arevalo's second assignment of error, he alleges that the trial court erred in not appointing a receiver for Millennium Holdings, L.L.C, when there was evidence to show that R. Menville continued to engage in self-dealing, breached fiduciary duties, committed gross mismanagement, and abused control. As an example, he claimed that R. Menville set up various entities and had himself appointed the managing partner. Aravelo further stated that he found out that four lots were being sold to a trust fund in Menville's name, the Menville Trust. Although these lots were never transferred, this knowledge prompted him to check various credit cards and expenses which he found to be inappropriate.
Louisiana Revised Statute 12:151C provides, in pertinent part, that the court may, ex parte, pending trial, appoint a temporary receiver. This appointment, however, is not mandatory, but is subject to sound judicial discretion. Thornton v. Lanehart, 97-1995, p.7 (La.App. 1 Cir. 12/28/98), 723 So.2d 1118, 1123.
When ruling on this issue, the trial court stated that even if it reformulated the control of the company by not counting the Menville and the Nadler shares, the remaining thirty-nine and one-half (39.5%) percent of the ownership of Millennium Properties still favor R. Menville's control and actions. Therefore, the question becomes whether the wants, desires and prayers of the minority owner with a thirty-two (32%) percent interest, outweigh and are superior to those views expressed by the remaining ownership, namely, the non-Menville, non-Nadler owners constituting thirty-nine and one-half (39.5%) percent ownership. The trial court said that the answer is "No." It further stated that Arevalo was trying to prohibit certain proposed actions apparently approved by the remaining thirty-nine and one-half (39.5%) percent ownership. Consequently, the trial court said that it was not prepared to appoint a receiver for this project. The trial court recognized that all such actions feared by Arevalo were susceptible of a monetary calculation.
We find no error in the trial courts' analysis of the facts and conclusions of law. It is clear from our review of the Louisiana jurisprudence that appointment of a receiver is a very drastic remedy and is used only in exceptional circumstances. Thornton, 97-1995, p. 11, 723 So.2d at 1125. As explained by the trial court, Arevalo is a thirty-two percent shareholder in this company. Any other shareholder joining in this lawsuit would have changed his minority position. Yet no others did. Although Arevalo made claims about R. Menville's self-dealing he failed to persuade the trial court to take this drastic measure.
Based on the evidence in the record, we conclude that the trial court did not abuse its discretion when it denied the request to appoint a temporary receiver for the company. This assignment of error is without merit.

DECREE
For the above reasons, we affirm the trial court judgment denying the motion for preliminary injunction and denying the motion to appoint a receiver. We deny the motion to dismiss the appeal. All costs of this appeal are assessed against the plaintiffs/appellants, Ray Arevalo and Millennium Holdings, L.L.C.
AFFIRMED; MOTION TO DISMISS APPEAL DENIED
NOTES
[1] Louisiana Code of Civil Procedure Art. 61 I, allows a shareholder to sue lo enforce a right on behalf of a corporation, article 615(3) requires that the corporation he named as a defendant.
[2] Menville Hied a motion to dismiss the instant appeal claiming that the matter is moot since the subject of the injunction, a merger*, already took place. Arevalo countered, claiming that the requested relief was not based solely on enjoining the merger, hut also, the dental of appointing a receiver to keep Menville from divesting the company's assets. We deny the motion to dismiss and address (he appeal.
[3] Emanuel Nadler owns Gorado Service Co. Inc.
[4] The reconventional demand included a prayer for return of Arevalo's 32% interest in Millennium Holdings, and for damages due 1o Arevalo's actions/inactions.
[5] Louisiana Code of Civil Procedure art. 3612(c) allows an immediate appeal from any order or judgment relating to a preliminary injunction.